## Supervisors of Sadsbury Twp. *versus* Dennis et al.

An Act of Assembly cannot impose upon a county a liability which had no previous existence, but it can provide a remedy for the enforcement of a pre-existing liability.

November 22d 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1879, No. 107.

Assumpsit by William Dennis and others against the supervisors of Sadsbury township to recover certain moneys alleged to have been paid out on account of the township as bounties to volunteers.

The material facts will be found stated in the opinion of this court.

*G. W. Hecker* and *J. B. Brawley,* for plaintiffs in error.—There was no evidence of any liability on the part of Sadsbury township to pay the plaintiffs anything for money paid or borrowed by them for bounty purposes, except that which was imposed upon the township by the Act of April 9th 1872. This is not an Act of Assembly providing a remedy where there is a right or obligation. It, in truth, provides no additional or new remedy, but simply imposes a liability in direct terms, and then provides that ordinary suits may be brought to enforce the liability thus imposed. It is not an Act of Assembly authorizing township authorities to pay, but it is an act requiring them to pay where no legal debt or duty

[Supervisors of Sadsbury Twp. *v.* Dennis.]

existed. It is an attempt on the part of the legislature to exercise judicial power by decreeing the rights and duties of private parties and is therefore unconstitutional and void: Tyson et al. *v.* School Directors of Halifax Township, 1 P. F. Smith 16 ; Sharpless *v.* Mayor of Philadelphia, 9 Harris 168 ; Grim *v.* Weissenberg School District, 7 P. F. Smith 437 ; Menges *v.* Dentler, 9 Casey 495. This law also imposes an unlimited liability, while by the original act the liability of the township could not exceed three hundred dollars bounty per man. When the act was passed the right of action was also barred by limitation. It also imposed upon the township the payment of a rate of interest in excess of the legal rate.

The proceedings for the settlement of the supervisors' accounts were a final adjudication of the rights of the plaintiffs to recover anything from the defendants for money advanced for them for bounty purposes, and a bar to the recovery in this case.

*Richmond & Sons*, for defendants in error.—The Act of 1872 impairs the right of no man—imposes no new obligation. It simply recognises an existing liability or duty on the part of the township to repay to our clients the moneys they had advanced for the benefit of its citizens, in the hour of their great emergency, and seeks to facilitate the remedy for enforcing it.

As to the Statute of Limitations, the question does not arise here, as the township, through its proper authorities, have issued duplicates and collected bounty tax, in liquidation of its indebtedness to our clients each year, up to, and including 1871. Suit was brought to recover the balance unpaid to January Term 1873.

Under the Act of April 11th 1866, Pamph. L. 778, the supervisors were cited in the summer of 1867 to appear before the auditors for settlement of their bounty money account. They appeared, and the auditors allowed only for seventeen men, thus showing a balance against the supervisors of several thousand dollars. From this finding, the supervisors took an appeal. The court, January 23d 1869, appointed a commissioner " to examine accounts, take testimony, report the facts, and strike a balance between the parties in the matter of appeal by the supervisors from the report of the auditors of Sadsbury township." The parties, on notice, appeared with their papers and witnesses before the commissioner, who, after careful examination, made his report, which was filed October 8th 1869, and confirmed by the court April 28th 1870. The commissioner reported the facts, as he could gather them from the testimony produced before him, but struck no balance between the parties.

Mr. Justice GREEN delivered the opinion of the court, January 3d 1881.

By the sixth section of the Act of March 25th 1864 the com-
15 NORRIS—26

[Supervisors of Sadsbury Twp. *v.* Dennis.]

missioners of every county in the Commonwealth were "author-
ized to borrow such sum or sums of money as may be sufficient to
pay to each non-commissioned officer and private soldier who
volunteered from such county," and entered the military service of
the United States after October 17th 1863, or who might, after the
passage of the act, enter said service, a sum not exceeding $300.
By a proviso to said section it was enacted that in case the com-
missioners neglected or refused to raise the necessary bounties in
townships, wards or boroughs the "said township, ward or borough
by their authorities aforesaid shall have power to proceed and raise
bounties as fully and as effectually as if done by the county authori-
ties." By the seventh section of the act the county commissioners,
or supervisors of any township, were authorized for the purpose of
carrying out the provisions of the act, to borrow money and issue
bonds or certificates of indebtedness in the name of the county or
township, and to levy and assess taxes for the payment of the
same.

By this act an undoubted legal liability was imposed upon the
county, borough or township, whose proper officers borrowed
money to pay bounties, to repay the sums thus borrowed, the
limit of the liability being $300 for each volunteer. Some doubts
having arisen as to the authority of township, borough and ward
authorities to make or contract loans for payment of bounties to
volunteers or to levy and collect taxes for the payment of such
loans, under the Act of March 25th 1864, the legislature, on
August 25th 1864, passed a supplemental act, declaring and defin-
ing more precisely the powers and authorities of those officers.
The first section provides that in all cases where the county com-
missioners neglected or refused to raise the money to pay the
bounties, "the respective cities, townships, wards and boroughs of
such county, by their authorities or board of election officers in
said act named shall have full power to contract loans, to pay
bounties to volunteers, and to levy taxes for the repayment of such
loans, as fully to all intents and purposes as the said county com-
missioners might or could have done under the provisions of said
act." The same section made legal and valid "all proceedings
taken or had by any township officers or authorities, or board of
election officers as in said act named, for the purpose of contract-
ing loans and all loans contracted by them, to pay bounties to
volunteers, and all taxes levied by them to repay such loans."

The authority conferred by these acts was very broad. It was,
to "borrow money," to "contract loans," not in any particular
mode, but in any mode, for the purpose of paying bounties, and
further, to levy and assess taxes "to repay such loans." It is
true that a power was given to issue bonds for the payment of the
money thus borrowed, but there was no prohibition against raising
money without the issue of bonds. It is quite clear that while the

[Supervisors of Sadsbury Twp. v. Dennis.]

issue of bonds was a lawful mode of raising the money authorized by the act to be borrowed, the creation of an indebtedness in any other form was equally within the spirit and the letter of the acts. In either event the liability of the county, city, borough or township to repay the money borrowed was established in unmistakable language.

In the present case, the supervisors of the township of Sadsbury undertook to raise $12,000 with which to pay $300 each to forty men. They tried to sell township bonds, but could not do it. Nobody would buy them. They then borrowed the money, as it was required, from certain banks. It was borrowed and it was used to pay bounties to volunteers. It was not borrowed for any purpose of their own. But in order to induce the banks to lend the money, they were obliged to pledge their personal credit. They gave their own notes to the banks for the money. This was a mode of borrowing, but it was a borrowing for the township, and the township was debtor for the money. Moreover, the township fully recognised and affirmed its liability by actually assessing and levying taxes to pay off the moneys borrowed. This was done during several successive years. In the meanwhile, the notes originally given by the supervisors were reduced and then consolidated into one, which was in turn reduced by payments from taxes levied until the amount of the last note given was but $502.25. This was on May 17th 1871. It is true this was a note given by the plaintiffs, who were the supervisors who had become liable personally for the debt, but it was the debt of the township created in pursuance of lawful authority. The township having refused to pay this small balance, the liability of the makers of the last note became fixed. In this condition of things an act was passed on April 9th 1872, which provided that where any township or district officers or authorities in the county of Crawford heretofore advanced money to secure the quota of soldiers for the township or district during the late civil war, or borrowed money for said purpose, for the payment of which they are in any wise personally responsible, the township or district shall be liable therefor to the full extent of the money advanced or borrowed, and the interest agreed to be paid therefor; and if the same is not paid within ninety days after the passage of this act, suit may be brought by bill or otherwise in the name of any and all persons so advancing or borrowing money, or their legal representatives, against such township," &c. This act creates a liability and gives a remedy. So far as it creates a liability which had no previous existence, we should regard it as inoperative under decisions heretofore made. But so far as it merely provides a remedy for the enforcement of a pre-existing liability, we do not consider it in conflict with any prohibitions of the Constitution. Prior to its enactment, the appropriate remedy would probably have been a petition for a mandamus to compel the township authorities

to levy a tax to pay to the bank or person to whom the debt was owing, the amount of principal and interest of said debt. Since the passage of the act, a remedy is given by an action in the name of the persons or their legal representatives, who originally borrowed the money. The debt to be paid is the same in either case, and it is a debt for which the township was clearly liable without the aid of the Act of 1872.

We are of opinion that the learned judge of the court below was correct in the view which he took of the subject, and we do not perceive any error in the rulings of the court upon the other questions which arose on the trial. The various matters of fact involved were fairly left to the jury, and were found by them in favor of the plaintiffs. The proceedings for the settlement of the supervisor's accounts do not even purport to be a determination of the matter in controversy here. They resulted in a commissioner's report in 1869 upon the question of the number of men actually raised, and the amount to which they were entitled ; and the commissioner further reported as to the amount raised by taxation and the amount borrowed from the banks. He did not affirmatively decide that only 39 men were raised. He reported that there was evidence that 40 men were raised, and other evidence that there were but 39—that if there were but 39 the sum paid for them would amount at $300 per man to $11,700, which would account for all the money raised but $761.46, which could easily be accounted for as expended in defraying various charges. He struck no balance between the parties, and did not pretend to determine how much, if any, of the money borrowed to pay the bounties was still due and unpaid, for which the plaintiffs remained liable. It is obvious that the mere accumulating interest on a sum so large as $12,000, which was only paid off in annual payments, would, in the course of a few years, constitute a considerable item. Of all this the commissioner made no inquiry and no adjudication. Yet the liability remained, and would necessarily remain until it was entirely extinguished. In point of fact the township continued to raise money by taxation to pay off the money owing in the banks long after the proceeding to settle the accounts of the supervisors had been commenced. For the purposes of this case it is sufficient to know that the matter in controversy in the present action was neither heard nor determined by the commissioner, to whom the accounts were referred, and, therefore, his report is no bar to this action. If it is alleged that in point of fact these plaintiffs did receive money enough to extinguish the township's debt for which they were liable, evidence to that effect should have been given on the trial of this case, and it would have been entitled to, and doubtless would have received, full consideration. Indeed, this very subject-matter was committed by the court to the jury thus: " The case is brought down to this : Did these plaintiffs in obedi-

ence to the Act of Assembly of 1864, officially provide for the procuration of bounties to be paid to volunteers? How much have they received? How much have they become indebted for? How much have they paid out? If they have paid out more than they received from the township by public taxation, they are entitled to recover in this suit." We see no error in this nor in the other comments of the court upon the questions at issue or the testimony relating to them. The jury have found by their verdict that the plaintiffs did pay out for the township a greater amount than they received, and that finding is conclusive.

Judgment affirmed.