Opinion by
Head, J.,
It is agreed that for many years prior to July 26, 1890, Mary E. Buchanan was the owner in fee of a tract of land, of which the lot, the subject of this suit, was part. On the date named, she, then a married woman living with her husband, signed and acknowledged a deed purporting to convey her title directly to her husband. In that deed she was the sole grantor, he the sole grantee. In 1901 she died *560 intestate, leaving her surviving, her husband and four children.
There can be no doubt that the deed mentioned was absolutely void. It conveyed nothing. It effected no change whatever in the title to the land. In Reagle v. Reagle, 179 Pa. 89, it was said: “The defendant offered what purported to be a deed from Catherine Reagle to John Reagle, but as it was, under the well settled law of this state, absolutely void and without effect upon her title, it was properly rejected:” Trimmer v. Heagy, 16 Pa. 484; Wicker v. Durr, 225 Pa. 305. And the deed was void,' not only because of the inability of the grantor to-divest her title by her own unaided act, but as well because of the incompetency of the husband, the grantee, to take. Hence it was held in Alexander v. Shalala, 228 Pa. 297, that where both husband and wife joined as grantors in the execution of a deed to convey her property, the husband being the sole grantee, such deed was wholly ineffective to work any change in her title. In the course of his opinion Mr. Justice Moschzisker says: “To render such a conveyance from the wife to the husband valid the statute must confer the power upon her, and thereby remove his common-law disability. . . . We are of opinion that there is no statute in Pennsylvania which authorizes or permits a direct conveyance of the wife’s real estate to her husband, and the deed in question should have been held unauthorized and void.” In the light of this decision we need not stop to discuss the manifestly futile effort of the husband several years after his wife’s death to inject himself into the deed mentioned as a party grantor.
In 1910 Rosa Brady, one of the children of Mary Buchanan, acquired by purchase the undivided interest in the land of her sister, Mrs. Warren, and a little later the like interest of another sister, Mrs. Spotts. Deeds of conveyance were duly executed, delivered and recorded. The contracts of purchase which resulted in these conveyances were in every sense legal ones. No court could have refused to enforce them, had one of the parties sought to *561 escape the obligations imposed by them. From the delivery of the deeds mentioned, August, 1910, to June 3, 1911, Rosa Brady was the undoubted legal owner of the two undivided interests she had bought, and her title shared in the protection of every guarantee with which our constitution and laws secure to the citizen the right of private property.
On the day last named the general assembly passed an act entitled, “An Act authorizing a married woman to make conveyances of real estate to her husband and validating all such conveyances heretofore made.” With its first section we have now no concern. It simply declared “that it shall be lawful for a married woman to make conveyances of real estate to her husband as if she were a feme sole.” The second section provides, “All conveyances of real estate heretofore made by any married woman to her husband, which have been duly signed, acknowledged and delivered by her, are hereby validated and made good in law.”
The plain language here used permits no escape from the conclusion that this section is and was intended to be retroactive in its operation and effect. And we must all agree that the statute cannot be successfully assailed nor its necessary consequences be avoided merely because it is retroactive. Many eminent jurists in learned opinions have endeavored to define the boundaries within which legislative acts of that character could be properly upheld. Journeay v. Gibson, 56 Pa. 57; Shonk v. Brown, 61 Pa. 320; Lane v. Nelson, 79 Pa. 407; and Grim v. Weissenberg School District, 57 Pa. 433, are notable examples of such opinions and about exhaust the legal learning on the subject. A brief excerpt or two from some of them will serve to mark the lines within which such legislation must be considered and the difficulties necessarily attendant on the determination of such questions. In Lane v. Nelson, 79 Pa. 404, Mr. Justice Paxson said: “Legislation of the character referred to is no novelty in this state. We have numerous instances in which it has been invoked for a great *562 variety of purposes. In some cases it has been sustained, and in others declared unconstitutional. The boundary line between the domains of authorized and prohibited legislation is not very clearly defined.” In Grim v. School District, 57 Pa. 433, Mr. Justice Sharswood said: "Retrospective laws and state laws divesting vested rights, unless ex post facto or impairing the obligation of contracts, do not fall within the prohibition contained in the constitution of the United States, however repugnant they may be to the principles of sound legislation. . . . Neither are they expressly or impliedly forbidden in any section of the ninth article or declaration of rights of the Commonwealth of Pennsylvania.” In Shonk v. Brown, 61 Pa. 320, Mr. Justice Agnew said: "The true principle on which retrospective laws are supported was stated long ago by Duncan, J., in Underwood v. Lilly, 10 S. & R. 97 , to wit: Where they impair no contract or disturb no vested right but only vary remedies, cure defects in proceedings otherwise fair, which do not vary existing obligations contrary to their situation when entered into and when prosecuted.”
In the view we take of the controlling question presented in this record, we need not inquire into the nature of the “vested rights” that may be divested by a retrospective legislative act. For if anything be clear from all of the cases it is that no court, — by the use of the expression quoted or any other, — has ever indicated any intention to adopt a construction of any statute that would bring it into conflict with the provision in both federal and state constitutions forbidding our legislature to pass any law impairing the obligation of a contract. Would the second section of the act of 1911, under the construction of it adopted by the learned court below, impair the obligations of contracts that were legal, binding and enforceable when entered into?
Let us assume that when Rosa Brady, in 1910, undertook to buy the land of her sisters she had entered into purchase contracts executory in form. Such contracts would have imposed on the one party the obligation to *563 convey the title bargained for; upon the other the obligation to pay the agreed on price. Under the law as it then stood neither of the parties could have been relieved from the duty of discharging these obligations. Now had the act been passed with the purchase contracts in that condition and held to be operative in such a case, what would have become of these contractual obligations? It would seem absurd to hold that the law could say to one of these parties, the title you held yesterday and contracted to convey, has to-day been divested by a legislative act but your obligation to convey remains unimpaired; or to the other, a statute has just now declared you cannot obtain the title you agreed to pay for but your obligation to pay has not thereby been diminished or changed.
Nor can it be successfully urged that any material change has been effected in the situation of Rosa Brady, purchaser, because her contracts had passed beyond the executory stage and been fully executed by the parties before the enactment of the statute. In construing the provision of the federal constitution on this subject, the supreme court of the United States long ago held that it embraced all contracts, executed or executory, between private individuals, states and individuals or corporations and between the states themselves: Green v. Biddle, 21 U. S. 1.
We have not attempted to consider or discuss the effect of the statute in a case where it would operate only on a status created or a right conferred by the law itself, not rooted in contract and not resting on any valuable consideration moving from the party to be affected. We go no further than to hold that because of the title acquired by Rosa Brady by purchase in 1910, the plaintiff has been unable to establish that he is the owner in fee of the lot he agreed to convey, by such title, to the defendant Corson. As the case is stated his right to a judgment, either for the lot itself or the purchase money agreed on depended on his ability to show such title in himself Having failed to establish a title in fee in himself it be *564 came the duty of the learned court below, under the stipulation in the case stated, to enter judgment for the defendants for costs.
Judgment reversed and record remitted with direction that judgment be entered in favor of defendants for costs.