Waits' Estate.

Argued May 23, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*M. Louise Rutherford,* Deputy Attorney General, with her *Claude T. Reno,* Attorney General, and *Joseph M. Loughran,* for appellant.

*Carroll Caruthers,* with him *George E. Barron, Willis E. Topper,* and *Vincent R. Smith,* for appellee.

*Henry E. Marker, Jr.,* for amicus curiæ.

OPINION BY MR. JUSTICE BARNES, July 3, 1939:

This appeal raises the question of the right of the Commonwealth to recover, from the estate of a deceased beneficiary, the total amount of "old age assistance" payments made to him under the acts of January 18, 1934 (Special Session), P. L. 282, and June 25, 1936, P. L. 28.

The Department of Public Assistance, on behalf of the Commonwealth, filed a claim against the estate of William N. Waits, deceased, for $756.00 representing the aggregate amount of monthly assistance payments made to the decedent from December, 1934, to May, 1937. The balance of the estate for distribution exceeded the claim of the Commonwealth by more than $600.00. The court below allowed the claim of the Commonwealth for refund of the assistance furnished from June 1, 1936, to the date of the death of the beneficiary, which occurred upon May 9, 1937, but rejected the claim for all payments made prior to June 1, 1936. Exceptions to the adjudication were dismissed, and from the final decree accordingly entered, the Department of Public Assistance of the Commonwealth has taken this appeal.

The court reached the conclusion that the claim for repayment was governed by the provisions of Section 15[1] of the Act of 1936, which provides for the reimbursement of the Commonwealth out of the "real and personal property of any beneficiary" for assistance furnished under that act or under the prior Act of 1934. The Act of 1934 contained no express provision for reimbursement. The court decided that, in view of Section 24 of the Act of 1936, which reads: "The provisions of this act shall become effective immediately upon final enactment and shall be retroactive to the first day of June, one thousand nine hundred and thirty-six," there could be no recovery by the Commonwealth of payments made

---

[1] Section 15 of the Act of June 25, 1936, P. L. 28, provides for repayment as follows: "Liability of Beneficiary and Estates.—The real and personal property of any beneficiary shall be liable for the repayment of assistance *received under this act, or the act repealed by this act,* whether such property was owned at the time such assistance was granted or acquired thereafter. Claims for assistance furnished shall have the same force and effect against the real and personal property of a deceased beneficiary, as other debts of a decedent, and shall be recoverable in the same manner."

prior to June 1, 1936, as that was the date to which the act was expressly made retroactive.

It seems to us that since Section 15 of the Act of 1936 specifically provides for the refund of all old age assistance, including that supplied under the provisions of the previous act, it must prevail over the general terms which are used in Section 24 of the act. It is a familiar rule that where there is a conflict between two provisions of a statute, one of which is specific and the other merely general, the specific provision will control unless it is clear that the legislature intended otherwise, or some other canon of statutory construction compels a contrary conclusion. For example, in *Com. v. Kline,* 294 Pa. 562, we said (p. 567) : "This is, indeed, the invariable rule whenever a conflict exists between specific and general provisions appearing in the same constitution, statute or agreement," that the specific provision will control the construction, so far as concerns the opposing matters dealt within it. See also *Buckley v. Holmes et al.,* 259 Pa. 176; *Philadelphia v. Commonwealth,* 270 Pa. 353; Endlich, Interpretation of Statutes, (1888) Section 216. There is nothing in the act itself to indicate that the legislature intended a result opposed to the plain meaning of the words used in Section 15 thereof.

An examination of the history of the passage of the Act of 1936, and of the repeal of the then existing law, makes it apparent that the principal legislative purpose was to bring our old age assistance laws into conformity with Title I of the Federal Social Security Act,[2] so that the state might become eligible to receive federal grants. This is clearly stated in Section 22. Section 24 was enacted solely for the purpose of making the assistance provisions of the statute effective on the first day of the Commonwealth's fiscal year, commencing June 1, 1936, and

---

[2] Act of August 14, 1935, (c) 531, 49 Stat. at L. 620, 42 U. S. C. A. Section 301.

it was necessary to make the act retroactive to that date in order to accomplish uniformity with the federal law.

We conclude, therefore, that Section 15 of the act is not limited by Section 24, and that recovery by the Commonwealth of all assistance payments made to beneficiaries under the two acts referred to is not restricted by Section 24 of the Act of 1936.

It is contended by one of the claimants of the estate that a construction requiring a refund of payments made under the Act of 1934, would render Section 15 of the Act of 1936 unconstitutional.

The fact that the operation of a statute is made retroactive does not render it unconstitutional, if it conflicts with no definite provision of the fundamental law. In *Grim v. Weissenberg School District,* 57 Pa. 433, Justice SHARSWOOD said (p. 435) : "There is no clause, either in the Constitution of the United States or of this Commonwealth, which prohibits retrospective laws . . . Retrospective laws and state laws divesting vested rights, unless ex post facto or impairing the obligation of contracts, do not fall within the prohibition contained in the Constitution of the United States, however repugnant they may be to the principles of sound legislation . . . Neither are they expressly or impliedly forbidden in any section of the ninth article or declaration of rights of the Commonwealth of Pennsylvania." See also *Shonk v. Brown et al.,* 61 Pa. 320; *Lane v. Nelson,* 79 Pa. 407; *Buchanan v. Corson,* 51 Pa. Superior Ct. 558.

It is clear that Section 15 does not cause a deprivation of property without due process of law. Claimant contends that the Old Age Assistance Law of 1934 bestowed upon the persons benefited irrevocable gifts, with no obligation of repayment. Such an assumption ignores the true intention of the legislature, which may be drawn from the Act of 1934 as a whole, and from many of its sections separately. The legislature did not intend to grant bounties to those who reached the

required age of seventy years; its purpose was to provide assistance to "indigent persons" of that age who had no other adequate means of support.[3]

Although it is true that it was not required that a beneficiary be destitute of all property, it obviously did not intend that one whose property was sufficient to maintain him adequately should receive state aid. The legislature did not propose to enrich the legatees, heirs and creditors of the beneficiaries, but merely to enable the latter to sustain themselves. This is a form of public charity. Assistance payments would, of course, cease if the beneficiary acquired sufficient personal means to support himself. From the general tenor and purpose of this legislation, it is clear that there was an implied obligation on the part of the beneficiary to repay the state for its assistance, if, and when, he was in a position to do so, and that this obligation should constitute a claim upon the estate of a deceased beneficiary. There was no need to incorporate this condition in the statute, for at common law there is an implied duty on the part of a recipient of public assistance, or his estate, to make reimbursement. Thus in *Arnold's Estate*, 253 Pa. 517, we held that the estate of an indigent lunatic was liable to pay the claim of the Commonwealth for his support. We said (p. 520) : "It is said that such repayment is in conflict with the policy of our poor laws and our idea of charity. But it seems to us there is something radically wrong with the theory that a patient may leave an institution with a large estate of his own in his pocket without any legal obligation resting upon him to pay for the food he consumed . . . Nor does the demand for reimbursement under such circumstances detract from the charity. If the pauper receives the maintenance

---

[3] The title of the Act of 1934 stipulates that the beneficiaries of assistance are to be "certain aged indigent persons." Section 5(g) makes eligible for assistance an aged person who "is indigent and has no child or other person responsible under the law of this state and able to support him or her."

upon the condition that he shall pay when able, it answers his needs just as much as if there were no obligation to pay under any conditions."

Equally appropriate is the language of Mr. Justice SCHAFFER in *Smith's Case,* 298 Pa. 358, (p. 361) : "The principle which underlies the acts referred to is the one which supports liability at common law by the estate of a lunatic; that there is an obligation upon his part or upon his estate to reimburse all those who have supplied his necessities." See also *Directors v. Nyce,* 161 Pa. 82; *Mansley's Estate,* 253 Pa. 522; *Commonwealth v. Evans,* 253 Pa. 524; *In re Frank Hoffman,* 258 Pa. 343; *Walters' Case,* 278 Pa. 421; *Bole's Estate,* 316 Pa. 179; *Cronin's Case,* 326 Pa. 343.

Therefore it seems to us that although the Act of 1934 made no express provision for reimbursement, there was an implied condition attached to every payment of assistance funds, that the recipient would repay the Commonwealth when able to do so, and that his estate should be subject to the same liability. Whether the obligation be regarded as contractual or quasi-contractual, it was nevertheless inherent in the acceptance of state aid. It is apparent that the provision of Section 15 of the Act of 1936 is merely declaratory of the existing law, creating no new obligation and conferring no additional right or remedy upon the Commonwealth which it did not already possess. A retrospective statute which does not vary existing obligations is not in violation of the due process clause of the Constitution; it does not effect an unconstitutional impairment of contracts. See *Shonk v. Brown et al.,* supra, page 327; *Supervisors of Sadsbury Township v. Dennis et al.,* 96 Pa. 400.

The Act of June 24, 1937, P. L. 2051, repealed the Act of 1936, but, by Section 16, expressly saved any rights accrued or vested under the enactments repealed. Since the claim of the Commonwealth is in this category, it is necessary only to say that this section of the Act of 1937 does not violate Article III, Section 6, of the Con-

stitution.[4] It is not a re-enactment of any law by reference, but is merely confirmatory of rights existing at the time of its adoption.

For the reasons above set forth, we are of opinion that the Commonwealth is entitled to the allowance in full of its claim against the estate.

Decree reversed. The record is remitted to the court below for the entry of a final decree of distribution in conformity with this opinion; costs to be paid by the estate.

---

[4] Article III, Section 6, of the Constitution of the State reads: "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."