## Commonwealth v. York Trust Co., Guardian

*James J. Logan* and *John T. Logan*, for Commonwealth.

*Palmer C. Bortner*, for defendant.

LAIRD, J., December 18, 1939.—This is an action in assumpsit wherein the Commonwealth of Pennsylvania seeks to recover moneys provided by plaintiff under the authority of the Act of July 10, 1919, P. L. 893, for the

support and maintenance of defendant Marie S. Reiver. The York Trust Company, as guardian of said Marie S. Reiver, is joined as a codefendant in the proceeding. To the statement of claim an affidavit of defense raising questions of law has been filed.

The statement of claim avers that one Myrtle Reiver, of York County, widowed mother of defendant Marie S. Reiver and two younger children, all under the age of 16 years, applied to the trustees of the Mothers' Assistance Fund for aid in the support of herself and children, and that an award was made to applicant; that during the period beginning with the month of June 1927, and extending to and including the month of June 1933, monthly payments were made to such applicant totaling the sum of $935. It is further averred that such moneys were expended for the purpose of assisting said applicant to support herself and the three children in their own home, and that no part of said sum has been repaid or refunded to plaintiff. Averring that one fourth of the total sum paid by plaintiff was expended for the maintenance and support of defendant Marie S. Reiver, suit is brought to recover the sum of $233.75.

The statement sets forth that defendant Marie S. Reiver was born May 30, 1916. At the date of the first payment this defendant was, therefore, 11 years of age, and it follows that she reached the age of 16 years on May 30, 1932. So far as any payment made after May 30, 1932, the statement of claim is inaccurate in averring that one fourth part or any part of the moneys paid to the mother was provided for the benefit of defendant Marie S. Reiver. Under the provisions of the act authorizing such payments, no money could be provided by plaintiff for the benefit of defendant after she arrived at the age of 16 years. Therefore, it may be assumed that any payments made by the State after May 30, 1932, were made for the benefit of the mother and the other children of the family. However, this inaccuracy may be corrected by amendment and we shall, therefore, consider the

questions involved as if it were properly pleaded that moneys sought to be recovered are limited to payments made prior to May 30, 1932, i. e., for the five years between the 11th and 16th birthdays of defendant Marie S. Reiver.

It is further averred in the statement of claim that the said Marie S. Reiver on or about February 27, 1928, acquired funds in the sum of $500, and on said date the York Trust Company was appointed guardian of the said defendant; that on or about April 11, 1929, the guardian received as the property of said defendant Marie S. Reiver further sums totaling $2,183.86, and that no part of the funds paid into the hands of said guardian was expended for the support or maintenance of its ward, but that the same were conserved by the guardian, and a final account filed upon the attainment of majority by the said ward shows funds in the hands of her guardian totaling $3,754.97, a part of which sum is retained by said guardian.

The affidavit of defense asserts five reasons why the statement of claim is not sufficient. The first reason advanced is that the statement fails to aver a contractual relation, based on either an expressed or an implied contract between the parties. It can hardly be said that one who receives public assistance at the hands of an agency of the State has a contract with the State. However, it is our view that recovery in such instances is not to be conditioned upon a contractual relation between the two parties. If the law implies an obligation on the part of such beneficiary to repay the State for its assistance, whether the obligation be regarded as contractual or quasi-contractual is of no import.

In Waits' Estate, 336 Pa. 151, 157, in which the Supreme Court held that the right of the State to repayment of moneys paid out in the form of assistance to aged persons existed without statutory authority, it was said:

"Therefore it seems to us that although the Act of 1934 made no express provision for reimbursement, there was

an implied condition attached to every payment of assistance funds, that the recipient would repay the Commonwealth when able to do so. . . . Whether the obligation be regarded as contractual or quasi-contractual, it was nevertheless inherent in the acceptance of state aid."

Elsewhere in the above opinion, the Supreme Court held that there was an implied duty at common law on the part of a recipient of public assistance to make reimbursement.

At the argument learned counsel for defendants contended that such a ruling is in direct conflict with public policy as it relates to the matter of charity and the support and maintenance of orphans or dependent minors. This is effectively answered in Arnold's Estate, 253 Pa. 517, 520, which held that the estate of an indigent lunatic was liable to pay the claim of the Commonwealth for his support. From that opinion we quote as follows:

"It is said that such repayment is in conflict with the policy of our poor laws and our idea of charity. But it seems to us there is something radically wrong with the theory that a patient may leave an institution with a large estate . . . in his pocket without any legal obligation resting upon him to pay for the food he consumed. . . . Nor does the demand for reimbursement under such circumstances detract from the charity. If the pauper receives the maintenance upon the condition that he shall pay when able, it answers his needs just as much as if there were no obligation to pay under any conditions."

The second reason presented is that no facts are set forth in the statement showing that defendant is indebted to plaintiff. The fifth reason is that plaintiff fails to aver facts showing that it is entitled to any sum or sums of money in the hands of defendant. The answer to both of these reasons is that the statement avers the facts from which the legal obligation arises, and a legal conclusion need not be pleaded.

The third reason is that there is no averment in the statement that defendant Marie S. Reiver received any

sum or sums of money from plaintiff. The statement does, however, aver that one fourth of the funds paid by the State to the mother of defendant Marie S. Reiver was expended for the maintenance and support of such defendant, and, if this be proved, the fact that the moneys were not physically delivered into the hands of defendant herself will not be sufficient to prevent recovery. Our courts have in a long line of decisions held that moneys paid to an institution for the maintenance of an indigent lunatic may be recovered. As to the liability of the minor's estate for her maintenance we think it unnecessary to cite authorities. We believe the statement of claim sufficiently shows that the mother was unable to provide support and maintenance for the minor, and in any event, she was under no obligation to do so. While it is undoubtedly the duty of a father to maintain his minor children, notwithstanding the fact that they may have estates of their own, the obligation does not extend to the mother; she need not deplete her estate to save the estates of the children: Keough's Estate, 16 Dist. R. 225. Admitting that no part of the money in question was physically delivered to defendant, who at the time was a minor under 16 years of age, it follows that if the said defendant received the benefit incident to the expenditure of such money, and that such benefit consisted of her maintenance by virtue of such public assistance, the law implies an obligation to repay the State. The legislature did not intend to grant bounties to any of its citizens. Its intent was to provide assistance where there existed no other adequate means of support.

The fourth reason advanced is that the Act of 1919, under which the payments were admittedly made, does not provide for the repayment of public assistance awarded thereunder. It is contended that the first provision made by the legislature for the recovery of such moneys is to be found in The Support Law of June 24, 1937, P. L. 2045, and at argument counsel for defendant contended

that this latter act provides only for the recovery of public assistance payments made subsequent to the passage of the act. It is true that The Support Law of 1937 is the first statutory authority under which the State might sustain its claim. However, as we have outlined in our answer to the first question raised, there was at the time the payments herein referred to were made a common-law obligation on the part of the recipient to make reimbursement. Therefore, The Support Law of 1937 is merely declaratory of the existing law. As held in Waits' Estate, supra, such a statute does not vary existing obligations and cannot violate the due process clause of the Constitution nor effect an unconstitutional impairment of contracts.

It is to be noted that the Act of 1937 has itself been amended by the Act of June 9, 1939, P. L. 310, whereby certain limitations have been placed upon the broad right of the Commonwealth to recover moneys paid out in the form of public assistance. By the language of the recent amendment, the property of an indigent person shall be liable for the expenses of his support and maintenance incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if the right to ownership existed or was acquired during the time such expenses were incurred. This would seem to be the first statutory limitation upon the common-law right of the Commonwealth in this respect. In the instant case, however, the pleadings contain an averment that defendant owned (or acquired the right to ownership of) specified property during the time such expenses were incurred.

And now, December 18, 1939, in accordance with opinion herewith, the affidavit of defense raising questions of law is overruled. Leave is granted plaintiff to amend the statement of claim as to the amount claimed within 10 days, following which defendant shall have 15 days to file an affidavit of defense to the merits.