## Blum's Estate. No. 2

*James J. Logan* and *John T. Logan*, for Commonwealth.
*Palmer C. Bortner*, for respondent.

GROSS, P. J., February 20, 1940.—In our report of the audit of the first and final account of the administrator d. b. n. c. t. a. of the estate of Edward H. Blum, deceased, filed on October 9, 1939, we awarded to Urgie McConnell, also known as Urgie McConnell Smith and Urgie McConnell Huett, her claim for wages in the sum of $288.39; and, on October 11, 1939, the Commonwealth of Pennsylvania, Department of Public Assistance, by its petition filed in this court, asked "that it be substituted as claimant for said Urgie McConnell and that said award be marked to the use of the Commonwealth of Pennsylvania, Department of Public Assistance, and decreed to be payable to the said Commonwealth in accordance with The Support Law of June 24, 1937, P. L. 2045", on the ground that the Department of Public Assistance, beginning with October 7, 1936, and ending February 9, 1938, had furnished to said Urgie McConnell, as a public charge, the sum of $170.40. An answer in the nature of a demurrer was filed to said petition by Urgie McConnell, raising preliminarily the jurisdiction of the orphans' court to grant the prayer of the petition. In Blum's Es-

tate (No. 1), supra, page 588, we overruled the demurrer and held that this court has jurisdiction of the subject matter, the parties and the fund, and directed that respondent file her answer to the averments of fact set forth in the petition. The answer was filed and testimony taken in open court, resulting in satisfactory proof being submitted by the Commonwealth to show that said Urgie McConnell did receive, as a public charge, between the dates aforesaid, the sum of $170.40. Her counsel now contends that, aside from the question of the jurisdiction of the court, section 5 of the above-referred-to act of assembly indicates that, as a prerequisite to the relief prayed for by the Commonwealth, respondent must have been an indigent person at the time such substitution was requested.

Section 5 of The Support Law of June 24, 1937, P. L. 2045, provides as follows:

"Section 5. Recovery of Moneys Due Persons Publicly Cared for or Assisted.—(a) Whenever any person shall become a public charge or receive public assistance, the public body or public agency caring for or furnishing such assistance may sue for and recover any sum of money due such person;

"(b) Such suit shall be brought in the name of such person for the use of such public body or public agency. Proof that the person to whom such money is due became a public charge, or was publicly assisted, shall be conclusive of the right to recover whatever may be legally due such person. If the amount due shall have been reduced to judgment, the public body or public agency may be substituted as plaintiff in the judgment. If the sum due is founded on an order or decree of court, the public body or public agency shall have the right to recover the same;

"(c) Should such person become self-supporting, or be supported by a relative or friend, then any moneys recovered and not expended in the care or assistance of such person shall belong to him. In case of his death,

moneys not expended for his care, assistance and burial shall belong to his estate."

The Supreme Court, in Waits' Estate, 336 Pa. 151, has definitely settled the common-law liability of a person to repay to the Commonwealth moneys received under these circumstances. See also Drace's Estate, 34 D. & C. 426, Commonwealth v. Roos, Exec., 35 D. & C. 166, and Commonwealth v. Bell, 35 D. & C. 146.

The Support Law, supra, as well as the amendment of section 4 thereof, by section 1 of the Act of June 9, 1939, P. L. 310, clearly and definitely fixes the statutory liability of any person to pay back to the Commonwealth money received by them as a public charge. The act provides, in part, as follows:

"The real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred."

The Commonwealth, in order to recover back its money, bases its proceeding on The Support Law, while the moneys paid by it to Urgie McConnell could only have been paid in part under the Old Age Assistance Law of June 25, 1936, P. L. 28, and in part under the Public Assistance Law of June 24, 1937, P. L. 2051. All of these acts of assembly relate to one common subject—the establishment of a general system of administration of assistance to the needy poor and indigent of the Commonwealth. And, therefore, under the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52, the legislature, by passing these acts, is presumed to have intended to favor the public interest as against any private interest; and, under section 62 thereof, the acts of assembly establishing this system should be construed in pari materia, as relating to the same persons or things, or the same class of persons or things. The contention of coun-

sel for Urgie McConnell that section 5 of The Support Law, above quoted, can apply only to cases where the indigent person is receiving support at the time the substitution is requested, is a construction too narrow for us to adopt. We think that the terms of section 5 of the act are broad enough, and intended so to be by the legislature, to include all cases where assistance is being furnished or has been furnished by the Commonwealth. This construction, we think, is in harmony with the general plan of the Commonwealth to furnish assistance to poor and indigent persons and to recoup, wherever possible, the moneys so expended; and we feel that it is the duty of the court to so construe these various recent acts of assembly on this subject as to give them such coördinating relationship that their highly beneficent purpose may be given practical and effectual results.

Counsel for the Commonwealth contends that this court is not required, or perhaps has not the power under the acts of assembly aforesaid, to determine the equities of the parties interested in this fund. The Commonwealth's contention would, undoubtedly, be correct if Urgie McConnell were still a public charge, receiving assistance from the Commonwealth, but she is not; and, therefore, we think that it is not only the court's power but its duty to carefully guard the equity of Urgie McConnell in the fund, and the lien of her counsel for reasonable fees in securing it, and substitute the Commonwealth as plaintiff in the claim, only to the extent of the interest of the Commonwealth therein, to wit, the sum of $170.40, with interest from February 9, 1938.

A bill for the costs of this proceeding has been submitted by the clerk, amounting to $15, which we will order to be paid out of the fund.

We, accordingly, enter the following decree:

And now, to wit, February 20, 1940, subject to the payment of reasonable counsel fees to Palmer C. Bortner, attorney of record for Urgie McConnell, and the payment of the above costs of this proceeding, it is hereby

ordered and decreed that, in the awards made to Urgie McConnell in the schedule of distribution accompanying our report of audit, in the estate of Edward H. Blum, deceased, filed October 9, 1930, in the total sum of $288.39, the Commonwealth of Pennsylvania, Department of Public Assistance, is substituted as claimant, and said awards are marked to the use of the Commonwealth of Pennsylvania, Department of Public Assistance, to the extent of the sum of $170.40, with interest from February 9, 1938, to the date of payment; and it is further ordered that a copy of this decree be served upon counsel of record in this proceeding, and upon Donald B. Waltman, administrator d. b. n. c. t. a. of the estate of said Edward H. Blum, deceased, who is directed to pay said awards in accordance with this decree. An exception is granted to Urgie McConnell, respondent, to the action of the court in this regard.