Daisy Castleberry, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Victoria Freeman, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Diane Cook, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Sheila Thomas, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 1, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

*Richard Weishaupt,* for appellants.

*Linda M. Gunn,* Assistant Attorney General, with her *Robert E. Kelly,* Assistant Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 11, 1978:

We have before us the consolidated appeals of four recipients of Aid to Families with Dependent Children (AFDC) from the decision of the Department of Public Welfare (DPW/Department) terminating their assistance. The action was taken because the recipients refused to comply with the Department's regulations by executing liens in favor of the Department on real property which they held in trust for their minor children. We affirm.

The regulations[1] require applicants for or recipients of public assistance who own or acquire certain specified real or personal property to acknowledge, as a condition to receiving or continuing to receive assistance, that the property is liable for the repayment to the Commonwealth of public assistance they receive, and give the Commonwealth a lien on the property as security. The lien on real estate is created by the signing of DPW's Form PA-9, "Reimbursement Agreement." In it, the recipient confesses judgment in favor of the Commonwealth; however, the agreement provides that if property is the recipient's home, it shall not be the subject of execution during his lifetime or the lifetimes of his spouse or dependent children.

All of the appellants had been receiving AFDC assistance for themselves and their minor children when they purchased the homes in which they and the children had been living. They continue to live in those homes.

In the cases of appellants Castleberry, Cook and Thomas, title was transferred through deeds, each of which named as grantee the respective recipient as trustee for specifically named minor children; all

---

[1] DPW Public Assistance Manual, §3820 et seq.

three had executed separate trust instruments in which the trustee agreed to manage and maintain the property for the benefit of the children. Appellant Freeman purchased the property by installment sales agreement, which recites that the purchaser is "Victoria E. Freeman, Trustee," but does not name the beneficiaries; a separate unsigned trust agreement stating that the property was held "for the benefit of the children or grandchildren by right of representation of Victoria Freeman" was produced at the hearing before the Department's hearing examiner. When DPW became aware of these transfers, it proceeded to redetermine the appellants' eligibility for assistance[2] and, as part of that procedure, required appellants to sign PA-9 forms. Mrs. Castleberry signed the form in her name only, but refused to sign as trustee for her children, despite the instructions from DPW's Bureau of Claims Settlement that the form be signed in exactly the same capacity as the grantee appeared on the deed. Appellants Freeman, Cook and Thomas refused to sign the form at all. DPW notified the appellants, through the Philadelphia County Board of Assistance, of its intention to terminate assistance and informed them of their right to a fair hearing. Separate hearings were held before DPW hearing examiners, at which each appellant was represented by counsel. In Daisy Castleberry's case, the hearing examiner ruled that her five minor children remained eligible for assistance, but that her refusal to sign the PA-9 form in the manner requested by DPW rendered Mrs. Castleberry herself ineligible for assistance. In the other cases, the hearing examiners simply denied the appellants' appeals and sustained the decision by the Philadelphia County Board

---

[2] Redetermination is provided for in Regulations found in DPW Public Assistance Manual, §3512 et seq.

of Assistance to discontinue assistance.[3]  Appellants brought the question here.

Appellants contend that if they complied with DPW's requirement that they execute liens on the trust property, they would be violating their fiduciary duties by committing an unauthorized invasion of the trust corpus; that DPW may not compel such an encumbrance of a minor's property without court authorization; and that Section 4 of The Support Law, Act of June 24, 1937, P.L. 2045, *as amended*, 62 P.S. §1974, requires that the Department bring suit in an appropriate forum to secure such a lien.  Therefore, they argue, DPW may not penalize them for refusing to sign the PA-9.  There is no merit to their position.

No concept is more fundamental to our system of public assistance than the rule that need and dependency are the sole criteria for eligibility; and courts have been scrupulous in striking down attempts by states to impose any other conditions on the right to receive assistance.  *King v. Smith*, 392 U.S. 309 (1968); *Stoddard v. Fisher*, 330 F. Supp. 566 (D. Me. 1971); *Cooper v. Laupheimer*, 316 F. Supp. 264 (E.D. Pa. 1970).  Need, in turn, is a function of the resources available to the individual and, in the case of Aid to Families with Dependent Children, the resources available to the family as a whole.  Thus, Section 432.2 of the Public Welfare Code (Code)[4] requires applicants for public assistance to disclose their income and resources as defined in the Act or in De-

---

[3] In the adjudications in the Freeman, Cook and Thomas cases, the hearing examiners did not distinguish between the benefits payable to the mother because of her own eligibility and those payable because of the eligibility of dependent children.  For the reasons which follow, we believe the result in those cases was more consistent with the stated purpose of the reimbursement requirement.

[4] Act of June 13, 1967, P.L. 31, *as amended*, added by Section 5 of the Act of July 9, 1976, P.L. 993, 62 P.S. §432.2.

partment regulations, and Section 432.12, 62 P.S. §432.12, provides that the income of all members of the assistance unit who are 14 years of age or over shall be considered in determining the need for AFDC. Consideration of the applicants' real and personal property holdings is provided for in Section 432.5 of the Code, 62 P.S. §432.5. Under that section and subsection (4) of Section 432, 62 P.S. §432(4),[5] although a recipient is not required to convert the house in which he lives to cash, the property is considered a resource for eligibility purposes (though not an immediate available resource) ; and, if it is worth more than $500, the recipient may not dispose of it for less than fair consideration, as by making a gift of the property, without losing his right to assistance for

---

[5] The two sections provide:

§432.5  Limits on property holdings

(a) Real and personal property which an applicant or recipient owns or in which he has an interest are resources which must be considered in determining initial and continuous eligibility for assistance, subject to the limitations and exceptions hereinafter proscribed.

(b) an applicant or recipient may retain real property owned by him, or in conjunction with any other person without reference to its value if such real property serves as the home of such applicant or recipient.

. . . .

(d) In the case of any nonresident real property, the applicant or recipient must take adequate steps to offer such property for sale on the open market, convert it to cash, with such sums being considered an available resource. The applicant or recipient shall acknowledge the liability of the property for reimbursement.

§432.  Eligibility

. . . .

(4) Assistance shall not be granted (i) to or in behalf of any person who disposed of his real or personal property, of the value of five hundred dollars ($500), or more, without fair consideration, within two years immediately preceding the date of application for assistance. . . .

two years. If the recipient does decide to sell the property, the proceeds are considered an available resource.

The liability of a public assistance recipient's property for reimbursement to the Commonwealth for assistance received is imposed by Section 4 of The Support Law, which provides in part:

> [T]he real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or public agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children.

The statute has its roots in the common law, *Waits' Estate,* 336 Pa. 151, 7 A.2d 329 (1939). The purpose of the requirement is expressed in Section 3820 of the Department's Public Assistance Manual:

> There are two closely related reasons for reimbursement. The one rests on the basic principle that public assistance supplements re-

sources and that whenever assistance is granted in lieu of the utilization of certain resources, the assistance should be repaid whenever these resources become available. The second reason relates to the financing of the program since reimbursement results in a recovery of money that is then available for redistribution as assistance, thereby reducing to this extent the need for additional tax revenues.

Requiring reimbursement from persons who receive assistance in lieu of the utilization of certain resources insures that they are treated equitably with other persons who have the same kind of resources but who use their resources instead of seeking public assistance. Inherent in this concept is a further saving of tax moneys, since persons are thereby encouraged to find ways of remaining independent of public assistance.

. . . .

The property which is liable for reimbursement is, generally, that which is not immediately converted into cash and used for current maintenance. Resident property, frozen assets, interests in or rights to real property, benefits, compensation, damages, or other assets whose conversion into cash is delayed are examples of resources from which reimbursement is required.

This statement of philosophy is completely consistent with the principle that need and dependency are the sole eligibility criteria. On the other hand, any procedure which would distort or render incomplete the picture of a recipient's resources would be repugnant to that principle. The same would be true of a device which would enable an AFDC recipient to shelter from reimbursement liability property which

truly constitutes a resource to the assistance unit. The trust agreements at issue here constitute just such a device.

The appellants argue that the trusts possess all of the necessary elements for valid inter vivos trusts, and that they impose upon each of the trustees legally enforceable duties. We need not decide this issue, for, even if the contention is correct, the simple and undeniable fact is that here one member of the AFDC assistance unit—the mother—has purchased property and holds it in trust for other members of the assistance unit. In this light, the question of whether the mother "owns" the property, who holds the legal and equitable interest, and other related questions of the law of trusts, are irrelevant. In each case, the mother purchased property in which she lived and placed it in trust for children who were her dependents and for whom she received assistance. The property remained a resource of the family, *i.e.*, of the assistance unit, and may therefore properly be liened by the Commonwealth as a source of later reimbursement.

Furthermore, it is clear that the mothers, as their children's trustees, are the parties legally empowered to sign the reimbursement form. Since the signing of the form would enable the children to continue to receive public assistance payments, the mothers cannot be heard to say that by signing the form and thereby encumbering the property, they would be violating their fiduciary duty to manage the properties for the benefit of their children.

Finally, we discern no merit in appellants' argument that the Department must proceed against recipients in the position of fiduciaries by initiating an action at law against them. Section 4 of The Support Law, by providing that the Department "may sue," and thereby conferring on it a remedy at law, in no manner restricts the Department to that remedy or

prevents it from conditioning eligibility upon the signing of an agreement to reimburse. In the face of appellants' refusal to sign, the Department's action disqualifying them from receipt of further assistance was proper.

We will affirm, but will afford appellants an additional opportunity to comply with the Department's requirement.

Accordingly, we

#### ORDER

AND Now, this 11th day of July, 1978, the adjudications and orders of the Department of Public Welfare declaring Daisy Castleberry, Victoria Freeman, Diane Cook and Sheila Thomas ineligible for public assistance are hereby affirmed. It is further ordered that the Department of Public Welfare shall afford appellants an additional opportunity to sign Reimbursement Agreement Forms PA-9 within fifteen (15) days of the date of this Order.