## Arnold's Estate.

*Lunatics—Maintenance—Reimbursement from lunatic's estate—
Claim of Commonwealth.*

1. The law implies an obligation on the part of a lunatic or his
estate, to reimburse those who have supplied his necessities.

2. An estate acquired by a lunatic after he became a public
charge, is liable for his previous maintenance.

3. The Act of June 1, 1915, P. L. 661, providing for the collection
by the Commonwealth of amounts expended for the maintenance
of a lunatic confined in a State hospital, applies to the collection
of claims due the Commonwealth at the time of its passage as well
as those which became due thereafter.

4. Where an indigent lunatic was confined in a State hospital, and
thereafter, but prior to the passage of the Act of 1915, acquired an
estate, the Commonwealth was entitled to recover from the guardian
of the lunatic's estate, all amounts expended by it for the main-
tenance and support of the lunatic, including amounts expended
by it previous to the acquisition of the estate by the lunatic.

Argued Feb. 9, 1916. Appeal, No. 392, Jan. T., 1915,
by the Commonyealth, from order of C. P. Delaware
Co., Dec. T., 1912, No. 125, dismissing petition for award
from the estate of a lunatic for the maintenance of said
lunatic at a State Hospital for the Insane, In re Estate

518          ARNOLD'S ESTATE.

of Walter Clarence Arnold, a Lunatic. Before MES-
TREZAT, POTTER, FRAZER and WALLING, JJ. Reversed.

Petition for rule to show cause why guardian of luna-
tic's estate should not pay for maintenance of lunatic
at State hospital. Before BROOMALL, J.

The opinion of the Supreme Court states the facts.

The petition was dismissed. The Commonwealth
appealed.

*Errors assigned* were (1) in dismissing the petition
and in finding (3) that there was no statutory or (4)
implied liability to the State.

*John Hyatt Naylor*, Special Attorney, with him *Fran-
cis Shunk Brown*, Attorney General, for appellant.—
Under the Act of June 1, 1915, P. L. 661, the statutory
right was conferred upon the Commonwealth to collect
the amount which it expended for the maintenance of a
lunatic confined in a State hospital.

There was an implied obligation on the part of the
lunatic or his guardian to pay to the Commonwealth the
amount claimed in this proceeding: Palmer, et al., v.
Hudson River State Hospital, 61 Pac. Repr. 506; Dan-
durand v. Kankakee County, 63 N. E. Repr. 1011; City
of Alton v. Madison County, 21 Ill. 115; City of New
Bedford v. Chace, 71 Mass. 28; Inhabitants of Hanover
v. Turner, 14 Mass. 227; Town of Rumney v. Keys, 7
N. H. 571; LaRue v. Gilkyson, 4 Pa. 375; Ward's Est.,
22 Pa. D. R. 564; Commonwealth v. Sheasley, 43 Pa.
C. C. 665; Hunsberger's Est., 23 Pa. D. R. 1108; Shiel's
Case, 43 Pa. C. C. 657; Repsher's Est., 24 Pa. D. R. 15;
Thomas's Est., 24 Pa. D. R. 31; City of Albany v. Mc-
Namara, 117 N. Y. 168 (22 N. E. Repr. 931); Trustees
of State Hospital for the Insane at Danville, Pa., v. Ly-
coming County, 239 Pa. 402; Commonwealth, to use of
State Hospital for the Insane, v. Philadelphia County,
193 Pa. 236; Rogers' App., 119 Pa. 178; Commonwealth
v. Baum, 250 Pa. 469.

*George M. Booth,* and *John E. McDonough,* for appellee.—The Commonwealth is not the proper claimant in this proceeding: Commonwealth, to use of State Hospital for the Insane, v. County of Philadelphia, 193 Pa. 236.

OPINION BY MR. JUSTICE POTTER, May 8, 1916:

The only question here involved is the right of the Commonwealth to be reimbursed from the estate of a lunatic, for money paid for the maintenance and support of the said lunatic, while committed to a State hospital as an indigent insane person. The amount expended by the Commonwealth in this instance is not disputed. The Act of June 1, 1915, P. L. 661, makes direct provision for the collection, by the Commonwealth, of the amount expended for the maintenance of a lunatic confined in a State hospital. It appears from Section 8, that the act is intended to apply to the collection of claims due the Commonwealth at the time of its passage as well as those to become due thereafter. But the learned judge of the court below, was of opinion that nothing was due to the State, and that the amount paid by the State for the support and maintenance of the lunatic, was to be regarded merely as a gratuity. With this conclusion we cannot agree. Moved by the dictates of humanity, the State makes provision for the care of the indigent insane, in cases where there is no one legally liable for their support, or where such person or persons by reason of poverty are unable to discharge that duty. But there is no warrant whatever, for charging upon the State the burden and expense of caring for those who have estates sufficient for their maintenance. In the present case when the lunatic was committed in January, 1910, he was apparently an indigent person. But in November, 1912, he inherited a considerable estate, which is now in the hands of his guardian. As soon as sufficient funds came into his hands, it was the plain duty of the guardian, to assume the support and main-

tenance of the lunatic, and no part of the expense should have been permitted to fall upon the State. The court below has found that the guardian has in his hands, estate amply sufficient to reimburse the State for the amount which it has paid out for the support of the lunatic. The fact that the estate was for a time not sufficient, and that the State during that period undertook the support of the lunatic, is no reason why it should not now be reimbursed for the outlay. The general proposition that the law implies an obligation on the part of a lunatic or his estate to reimburse those who have supplied his necessities, cannot be questioned. In Directors of Poor & House of Employment of Montgomery County v. Nyce, Committee of Malone, 161 Pa. 82, it was expressly held that an estate acquired by a lunatic after he became a charge on the public was liable for his previous maintenance. While that case was under the Act of 1836, which did not refer to claims of the Commonwealth, yet it involved the same principle. The opinion of the court below in that case was commended by this court, and, in speaking of necessary supplies furnished to one who was at the time a pauper, it was said: "Why should the recipient of the supplies under such circumstances escape payment when in funds? If he is compelled to pay he simply does that which in good morals he ought to do voluntarily. His payment enables the county to enlarge its liberality in other needy cases. It is said that such repayment is in conflict with the policy of our poor laws and our idea of charity. But it seems to us there is something radically wrong with the theory that a patient may leave an institution with a large estate of his own in his pocket without any legal obligation resting upon him to pay for the food he consumed. Such treatment of the patient is not calculated to stimulate his honesty or improve his citizenship. Nor does the demand for reimbursement under such circumstances detract from the charity. If the pauper receives the maintenance upon the condition that he shall pay when able,

it answers his needs just as much as if there were no obligation to pay under any conditions." In the present case, the court below was of opinion that, if any implied obligation to pay for necessaries which had been furnished arose, it was in favor of the corporation, the State hospital, and not in favor of the Commonwealth. But in reaching this conclusion the court evidently overlooked the fact that the hospital has no claim here, as it has been paid by the State, and by the county, for the maintenance of the lunatic. The Acts of June 13, 1883, P. L. 92; May 21, 1889, P. L. 258, and May 1, 1907, P. L. 153, fix the amount to be paid by the county at $1.75 per week, and provide that the excess, not exceeding $2.50 per week, shall be paid by the State. While this money is appropriated to the hospital and paid to the hospital authorities, it is paid under these acts for "the expense of the care and treatment of the indigent insane," in the hospital, and is calculated upon the basis of a specific charge, not exceeding $2.50 per week for each person. The money is paid, not for the support of the hospital but for the care and treatment of the individual patients. If an individual should pay the hospital for the maintenance of a patient, such individual would undoubtedly be entitled to reimbursement from the lunatic's estate. In like manner and for the same reason, in the present case, the State is entitled to reimbursement. As we said above, the hospital has been paid, and can have no claim against the lunatic or his estate. If there is an implied contract to repay the sums expended for the lunatic's benefit, it is a contract with the State, not with the hospital, which had expended nothing except what it had received from the county and State for that purpose.

The court below finds, as facts, that "the State of Pennsylvania has paid to the State hospital $629.64, in addition to the sum of $1.75 per week paid by the County of Delaware, and that said moneys were toward the maintenance and support of said lunatic." These facts are

expressly averred in the petition and are not denied by the answer.

The first, third, and fourth assignments of error are sustained, the judgment of the court below is reversed, and the correctness of the claim as to amount being admitted, it is ordered and directed that George M. Booth, guardian of Walter Clarence Arnold, pay to the Commonwealth of Pennsylvania, the sum of $629.64, being the amount due to said Commonwealth, to reimburse it for moneys paid for the maintenance and support of said Walter Clarence Arnold, a lunatic.