## Metcalfe's Estate

*James F. McMullan*, for exceptant.

*David J. Smyth* and *T. B. K. Ringe*, contra.

LAMORELLE, P. J., November 30, 1934.—At the audit of the account of the administrator of the estate of Eliza Ann Metcalf, an intestate, the city, as well as the Commonwealth, presented claims for board and maintenance of such intestate in the Philadelphia Hospital. The learned auditing judge awarded the balance shown by the account to the City of Philadelphia as part payment of its claim, and ruled that the Commonwealth was entitled to nothing until and unless all other creditors had been paid in full.

The Commonwealth filed exceptions, resting on section 7 of the Act of June 1, 1915, P. L. 661. This act is entitled: "An act relating to the maintenance of insane, feeble-minded, and other persons confined in the various institutions of the Commonwealth; fixing liability for their support; providing for the collection of the moneys due the Commonwealth therefor, and for proceedings relating thereto."

By its first section, it provides that whenever any person is maintained as an inmate of any hospital, home, sanatorium, or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance. There is the further provision (section 3), that the husband, wife, father, mother, child, or children of any such person shall also be liable.

Section 7, on which exceptant relies, is as follows:

"Where there is a claim against the estate of any person maintained in any home, hospital, asylum, or other institution, both on behalf of the Commonwealth and on behalf of any county or poor district, and there is not sufficient in the estate to pay the claim in full, the same shall be paid pro rata to the State and the county, in the proportion of the amount of maintenance legally recoverable by each."

This section, to be properly understood, must be read in connection with section 6:

"All claims by the Commonwealth for maintenance, as herein provided, in the distribution of any of the estate of any person so maintained, shall take precedence and be paid after other claims which by law are now given precedence, and before any claims of general creditors."

What claims were by law given precedence? We turn, therefore, to section 21 of the Act of February 24, 1834, P. L. 70, 76, to ascertain what was "by law" then "given precedence". It reads:

"All debts owing by any person within this state, at the time of his decease, shall be paid by his executors or administrators so far as they have assets, in the manner and order following, viz.: 1. Funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, and servants' wages not exceeding one year; 2. rents, not exceeding one year; 3. all other debts, without regard to the quality of the same, except debts due to the Commonwealth, which shall be last paid."

Whether or not sections 6 and 7 of the Act of June 1, 1915, P. L. 661, are constitutional need not be decided in this our opinion, although much could be said tending to show their unconstitutionality, in that, without being amendatory to the Fiduciaries Act of February 24, 1834, P. L. 70, 1 Purd. 1103, supra, they practically are violative of what has been and seemingly is the order of payment of debts from 1794 down, the title of the act seemingly not showing such purpose. If, however, these sections of the act are constitutional, then we are of opinion that they are repealed by the Fiduciaries Act of June 7, 1917. This latter act, which is really a reënactment of the one of 1834, by section 13 (a) provides in terms that debts shall be paid in the manner and order following, viz.: "One, funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, and servants' wages, not exceeding one year; two, rents, not exceeding one year; three, all other debts, without regard to the quality of the same, except debts due to the Commonwealth, which shall be last paid."

While the repealing clause does not in so many words repeal the Act of 1915, it does so by necessary implication. The repealing clause reads as follows: "All other acts of Assembly, or parts thereof, that are in any way in conflict or inconsistent with this act, or any part thereof, are hereby repealed"; and that clause does repeal in general as set forth in the above quotation.

Surely these sections of an act, that of 1915, supra, which seek to add to the well-defined and settled law of this Commonwealth, an additional or third preference between those entitled "1" and "2" of the Act of 1834, supra, and the last clause of such act relating to general claims, are inconsistent with section 13 of the Fiduciaries Act of 1917, which latter act fixes the rights of the Commonwealth as effective only when all other debts are paid, thus necessarily reënacting the old order as shown by section 14 of the Act of April 19, 1794, 3 Sm. L. 143, reënacted by section 21 of the Act of February 24, 1834, P. L. 70.

While counsel for the Commonwealth cites Mansley's Estate, 253 Pa. 522, as authority for its contention that the Act of 1915 is constitutional (to which he might have added Arnold's Estate, 253 Pa. 517, and Commonwealth v. Evans, 253 Pa. 524), it must be remembered that they are appeals from the rulings of the court of common pleas, and affect the estates of the living—lunatics and feeble-minded—and have no bearing on the distribution of estates of the dead. These decisions are undoubtedly correct; but we are now discussing distribution of estates of decedents under the practice of the orphans' court and legislation relating thereto.

Our recent case of O'Connor's Estate, 20 D. & C. 547, while not a claim for the board of a decedent but a claim against a surviving husband for his deceased wife's board (she being the decedent), sets forth at length in what Judge Gest there wrote, speaking for the court, our matured and deliberate conclusion as to the proper interpretation of the Fiduciaries Act, so far as the repealing clause was effective in repealing sections 6 and 7 of the Act of 1915; and so, without further comment or elaboration, we dismiss all exceptions and confirm the adjudication absolutely.