Reiver's Estate.

Argued October 7, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*M. Louise Rutherford,* Deputy Attorney General, with her *James J. Logan, Julius H. Tolson,* Special Dep-

uty Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*Spencer D. Wareheim,* with him *Palmer C. Bortner,* for appellee.

OPINION BY MR. JUSTICE STERN, November 24, 1941:

The Commonwealth, Department of Public Assistance, is here appealing, having attempted unsuccessfully in the court below to obtain reimbursement of certain moneys expended by it under the Act of July 10, 1919, P. L. 893.

In June, 1927, a grant was made under that act to Myrtle Reiver, a widow with three children, Marie, Charles and Catharine, and payments were continued until some time in 1937. Marie reached the age of sixteen in May, 1932, Charles in March, 1935. Amos D. Reiver, the children's paternal grandfather, died November 1, 1928, and from his estate Charles received the sum of approximately $2,700; after he attained his majority, in March, 1940, his guardian, York Trust Company, appellee herein, filed an account in the orphans' court showing a balance due Charles of over $4,000. At the audit of this account the Commonwealth presented a claim for reimbursement of Charles' proportionate share of the assistance which it rendered during the period while he was under the age of sixteen. The claim, which amounted to $414.16, was disallowed.

Where the State, under legislative authority, has provided maintenance for an indigent person, and it subsequently appears that the beneficiary has an estate or property of his own, the Commonwealth is entitled to recover from him the moneys expended on his behalf. Such a recovery has been allowed in cases where the Comwealth supported paupers in almshouses or persons of unsound mind in asylums,[1] or supplied assistance to the

---

[1] *Directors of the Poor v. Nyce,* 161 Pa. 82, 28 A. 999; *Arnold's Estate,* 253 Pa. 517, 98 A. 701; *In re Frank Hoffmann,* 258 Pa. 343,

aged,[2] or maintained dependent children committed to institutions under court orders.[3] Its right to repayment is not dependent upon statutory permission,[4] but rests upon the common-law doctrine that "there is an implied duty on the part of a recipient of public assistance, or his estate, to make reimbursement": *Waits' Estate*, 336 Pa. 151, 156, 7 A. 2d 329, 331. Originally recovery could have been had even out of property acquired by the beneficiary subsequent to his receiving assistance (*Directors of the Poor v. Nyce*, 161 Pa. 82, 28 A. 999; *Arnold's Estate*, 253 Pa. 517, 98 A. 701), but by the Act of June 9, 1939, P. L. 310, amending section 4(a) of the Act of June 24, 1937, P. L. 2045, it is limited to property owned by him during the time the assistance was rendered or his right to ownership of which existed or was acquired during such time.

Appellee does not attempt to contravene the principle thus firmly established but argues that, since the payments were made by the Commonwealth to the mother of Charles Reiver and not to Charles himself, reimbursement, if allowed at all, should be sought from her and not from him. This contention rests upon a fundamental misconception of the nature and purpose of the assistance rendered under the statutes, the first of which was the Act of April 29, 1913, P. L. 118. Those acquainted with the history and background of this legislation know that it was intended, not to assist the mother as an individual or widow, but solely to enable her to give her indigent children the shelter, clothing, food and care necessary to maintain them in their own home. It had long been pointed out by social workers

---

101 A. 1052; *Walters' Case*, 278 Pa. 421, 123 A. 408; *Smith's Case*, 298 Pa. 358, 148 A. 479; *Cronin's Case*, 326 Pa. 343, 192 A. 397; *Erny's Estate*, 337 Pa. 542, 12 A. 2d 333.

[2] *Waits' Estate*, 336 Pa. 151, 7 A. 2d 329.

[3] *Colucci's Estate*, 88 Pa. Superior Ct. 224.

[4] Now given by section 4(a) of the Support Law of June 24, 1937, P. L. 2045.

and those interested in philanthropic and welfare activities that, instead of the Commonwealth supporting orphan children in institutions and child-caring agencies, it would be preferable, and indeed cheaper, to pay to the mother herself the sums necessary for such support. But that the assistance was intended for the welfare of the children, and that the mother was merely the person through whom it was furnished, is not only apparent from the recorded discussions in the legislature which passed the original Act of 1913, but is disclosed by an analysis of the legislation itself. Thus, no matter how poverty-stricken a widow may be, if she has no children she receives no assistance from the State under these acts.[5] It is the number of dependent children in the family which determines the amount of the grant.[6] When a child attains the age of sixteen years the grant from the State terminates.[7] The mother has to satisfy the trustees of the fund as to her ability properly to maintain the home for the children.[8] The money is paid "as aid in supporting their children in their own homes,"[9] and only when the payment is necessary to keep the children there.[10] If a grant remains unpaid because of the death of the mother it is paid to a person legally responsible for the care of the children or standing in loco parentis to them.[11] Section 10 of the Act of August 7, 1936, P. L. 118, amending section 18 of the Act of July 10, 1919, P. L. 893, indicates who the real beneficiaries

---

[5] Act of April 29, 1913, P. L. 118, secs. 1, 3; Act of July 10, 1919, P. L. 893, sec. 6.

[6] Act of April 29, 1913, P. L. 118, sec. 3; Act of July 10, 1919, P. L. 893, sec. 9.

[7] Act of April 29, 1913, P. L. 118, sec. 3; Act of July 10, 1919, P. L. 893, sec. 11.

[8] Act of July 10, 1919, P. L. 893, sec. 8.

[9] Act of July 10, 1919, P. L. 893, sec. 6; see also Act of April 29, 1913, P. L. 118, sec. 1.

[10] Act of April 29, 1913, P. L. 118, sec. 3; Act of July 10, 1919, P. L. 893, sec. 8.

[11] Act of May 23, 1933, P. L. 964, sec. 1.

of this legislation are in that it authorizes the Department of Welfare to receive contributions from the federal government "for aid to *dependent children eligible for assistance under this act.*" Indeed, the Public Assistance Law of June 24, 1937, P. L. 2051, which has now superseded all other acts on the subject, provides for assistance to *dependent children* (a dependent child being defined as any child under the age of sixteen who resides with his mother and has been deprived of the support of his father by his father's death, continued absence from home, or physical or mental incapacity), and makes no provision at all for payments to the mothers of such children, although in practice the remittances are still made to the mothers as quasi-trustees instead of directly to the minor children themselves. Just as, in allowances to an institution for the maintenance of a pauper or a lunatic, the State makes the payments, not for the support of the institution, but for the care of the patient, so the payments to a widowed mother under these statutes are not for her own maintenance but for that of her indigent children, she rendering them the same service that an institution or child-caring agency would provide but with the added devotion expressive of a mother's love.

Since a widow, however needy, cannot obtain assistance from the State if her children have financial resources of their own, it follows, in view of the decisions already referred to, that if a grant be made to her in ignorance of the fact that assistance to the children was unnecessary, the Commonwealth may recover, out of the property of the children, the amount which it has thus expended. In the present case the taxpayers of the State supported Charles for more than six years, during all of which time he possessed financial resources of his own which could have been utilized for his maintenance had his guardian petitioned the orphans' court for that purpose, and it would be obviously unjust if the Commonwealth, which mistakenly supplied this assistance,

should not be allowed to recoup itself out of the funds which were primarily liable.

Because of the limitation provided by the Act of June 9, 1939, P. L. 310, no recovery can be had by the Commonwealth for payments made for Charles before November 1, 1928, when he acquired his interest in the estate of his grandfather. From then until May, 1932, when his sister Marie attained the age of sixteen years, the grants were for the three children in the family, and the permissible reimbursement from Charles would therefore consist of one-third of the total assistance furnished during that period. From May, 1932, to March, 1935, when Charles himself became sixteen, during which time only he and his sister Catherine were being supported by the State, the recovery would be of one-half. Appellee is insisting upon a fanciful degree of exactitude when it contends that, because of the impossibility of accurately determining how much of the payments received from the Commonwealth were actually expended for the benefit of Charles and how much for the other children, no recovery at all should be permitted. Although it is similarly impossible to prove that each patient in an asylum or hospital receives his exact proportionate benefit from the total expenditures of the institution, the courts have never required the Commonwealth to prove, as a prerequisite to recovery of funds expended for maintenance of an inmate or patient, the exact expense incurred by the institution for the particular dependent, and, indeed, were such a requirement to exist, it would bar recovery altogether in such cases. Under the legislation with which we are here concerned the amount of the grant is determined by the number of children, and it may fairly be assumed that each of them derives therefrom an equal benefit, especially as the principal advantage, the opportunity of enjoying home life, is shared by them in common.

The decree is reversed and the record remanded with directions to allow the claim of the Commonwealth to the extent herein indicated.