## Gemmill's Estate

*George Hay Kain*, for accountant and residuary legatee.

*Arthur Markowitz*, for Commonwealth of Pennsylvania.

GROSS, P. J., July 9, 1946.—At the audit of the first and final account of the executor of the estate of Cora May Gemmill, deceased, the Commonwealth of Pennsylvania presented a claim for the sum of $464.70 for reimbursement to it for expenses incurred by the Department of Public Assistance for the support and assistance of decedent from April 4, 1945, to October 18, 1945.

It was admitted that the amount of the claim by the Commonwealth is the correct amount so paid by the Department of Public Assistance, but the claim was objected to by Ann Barnett Skipper, the sole and residuary legatee in the will, on the ground that the Commonwealth had no right to reimbursement in this case for the reason that section 4 of The Support Law of June 24, 1937, P. L. 2045, as amended by the Act of June 9, 1939, P. L. 310, limits the right to reimbursement to the Commonwealth to the property "owned (by the decedent) during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred".

From the record and the evidence submitted, the following facts are undisputed:

On January 10, 1943, decedent became a salaried employe of York Corporation, formerly York Ice Machinery Corporation, and as such employe was a participant in group insurance payable to her estate in the event of her death. Because of serious illness, in the early part of March 1945, she was given a 60-day leave of absence during which time the group insurance remained in full force and effect. She was, however, finally relieved from her employment on March 29, 1945, and at the termination of the 60-day leave of absence, she availed herself of the right given to her by the group insurance certificate to take out a policy of life insurance on her own life. This policy was issued to her as of May 1945, and her estate was named as beneficiary therein. The policy had no cash surrender

value for the period of two years after issue. Had the decedent lived the period of two years, a cash surrender value of $45 would have accrued at that time.

The premiums on this insurance policy were payable quarterly. The first premium in the sum of $26.57 was paid by decedent on May 7, 1945, through her attorney, G. Hay Kain, and a second premium of like amount was paid by her attorney on August 2, 1945. Both premiums were paid out of moneys which were the property of decedent, entirely apart from the relief moneys received by her, beginning April 4, 1945, from the Commonwealth. Decedent, through her counsel, offered to the Department of Public Assistance an assignment of this life insurance policy as security for the moneys it was advancing on her behalf, but the Commonwealth did not avail itself of the opportunity to take the assignment, possibly because the assignment would have entailed the payment of premiums which the Commonwealth might not have had the right to pay.

Decedent died October 13, 1945, and the executor of her estate received from the insurance company, under the terms of said policy, the sum of $884.58. The first question before the court is whether or not the Commonwealth is entitled to reimbursement out of this fund.

At common law there is an implied obligation on the part of the beneficiary of public assistance to make reimbursement to the public body or agency furnishing said assistance, if and when the beneficiary is able to repay: Arnold's Estate, 253 Pa. 517 (1916) ; Waits' Estate, 336 Pa. 151 (1939) ; Commonwealth v. Adam, 36 D. & C. 710.

In Reiver's Estate, 343 Pa. 137, the Supreme Court recognizes and holds that by virtue of section 4 of the Act of June 24, 1937, as amended, the Commonwealth's right of reimbursement for old age assistance is no longer that afforded by the common law, but is limited by said acts of assembly, the Supreme Court holding:

"Originally recovery could have been had even out of property acquired by the beneficiary subsequent to his receiving assistance (Directors of the Poor v. Nyce, 161 Pa. 82, 28 Atl. 999; Arnold's Estate, 253 Pa. 517, 98 A. 701), but by the Act of June 9, 1939, P. L. 310, amending section 4(a), of the Act of June 24, 1937, P. L. 2045, it is limited to property owned by him during the time the assistance was rendered or his right to ownership of which existed or was acquired during such time."

Obviously, decedent did not have the insurance money at any time during her life. The premiums on the policy were not paid with moneys furnished by the Commonwealth. The policy was issued early in May and the two quarterly premiums paid thereon were paid out of her own moneys entirely apart from the relief moneys which she received from the Commonwealth. At no time during decedent's life was there any cash surrender value to the policy. She did not have a right to anything under the policy during her lifetime except to continue the policy. The liability to her estate under the policy arose from a liability of the insurance company which did not exist prior to her death. It is therefore clear that these insurance funds were not owned by decedent during that period of time contemplated by the acts of assembly aforesaid as property owned by decedent from which the Commonwealth could be reimbursed.

There was offered in evidence on behalf of the Commonwealth (Exhibit No. 2) an instrument in writing called "indemnity agreement", executed by decedent on March 28, 1945, at the time she filed her application for assistance. This agreement, however, merely recites that in the application for relief certain statements and representations as to the financial status of the applicant have been made and warrants the truth thereof, and an agreement to notify the Commonwealth of any changes in the facts set out in the written application. The agreement then contains a judgment bond

in the penal sum of $500 to be paid to the Commonwealth if the applicant has "in the past or shall in the future conceal or misrepresent any financial condition to the agency to which I have applied". However, in the absence of fraud or misrepresentation and if she shall notify the department of "all changes in the stated facts which would have rendered me ineligible for all or part of said assistance", then the obligation is to be void, otherwise in full force and effect. This indemnity agreement does not contain any promise of reimbursement except in the case where the applicant, through fraud or misrepresentation, induces the Commonwealth to render assistance, or to continue to do so. The Commonwealth, in support of its claim, makes no allegation of fraud practiced upon it by this decedent and, therefore, the indemnity agreement has no effect whatsoever upon the liability of this decedent's estate to reimburse the Commonwealth on its claim out of the moneys received on the life insurance policy.

However, the total assets of this estate, as shown by the inventory and appraisement with which the accountant charges herself, amount to the sum of $993.93, of which $109.35 represents the value of property owned by decedent other than the $884.58 insurance moneys.

Credits were taken in the account for expenses of administration and funeral expenses in the amount of $342.01, leaving a balance for distribution of $651.92. This balance is therefore not made up entirely of insurance moneys but is an admixture of both the insurance moneys and the other property of decedent.

The Commonwealth has a right to insist that the credits in the account be apportioned between the two funds in the proportion that the total value of the assets bears to the total credits. This would mean that 34.41 percent of $109.35, or the sum of $37.62 of the credits in the account must be allocated against the $109.35, leaving a balance of that fund of $71.73 in the

balance on the account for distribution and a balance of $580.19 of insurance moneys.

We here have two funds applicable to the payment of debts, one in the sum of $71.73, the other in the sum of $580.19. The Commonwealth can look to the first fund only for payment of its claim, while the other creditors can look primarily to both funds for payment. The larger fund is ample to pay all other creditors in full and, therefore, under the equitable doctrine of marshalling, justice requires us to award the total of the first fund, the sum of $71.73 to the Commonwealth on account of its claim.

The residuary legatee cannot object to this procedure because she is a mere volunteer and must be satisfied with what is left after decedent's debts are paid: See Shannon v. Newton, 132 Pa. 375, and Thomas v. Waters, Admr., 342 Pa. 125.