## Smith Estate

*James T. Kitson,* for petitioner.

*Leo A. Achterman,* for respondent.

*Forest J. Mervine,* county solicitor, for intervenor.

DAVIS, P. J., December 5, 1950.—This matter comes before the court on petition of the Commonwealth of Pennsylvania praying that an order be made directing Frank S. Weiss, guardian of the estate of Lottie G. Smith, a weak-minded person, to pay the Commonwealth of Pennsylvania a certain specified sum for the maintenance of Lottie G. Smith, or to pay the same to the extent of the available assets in the estate of Lottie G. Smith, in accordance with the Act of July 11, 1923, P. L. 998, as amended, and the Act of June 1, 1915, P. L. 661, as amended. The guardian filed an answer to the petition and the matter came on for hearing.

The record discloses that Lottie G. Smith, a weak-minded person, was committed to the Allentown State Hospital on or about March 23, 1918, where she has remained as a patient to the present time. For care and maintenance of this patient the sum of $1.50 per week was paid by the father in his lifetime and subsequently by the patient's guardian out of the assets of her estate, as billed by the Commonwealth. This proceeding is brought to recover the difference between the amount paid and the actual cost of care and maintenance from the year 1918 to the present time.

The Commonwealth had knowledge of the death of the father, Silas F. Smith, in 1929, but did not make

any claim on his estate for the care and maintenance of Lottie G. Smith.

The assets of the Lottie G. Smith Estate were derived from her one-half interest in her father's estate in the sum of $4,218.74.

For the period from November 1, 1929, to February 28, 1931, the Commonwealth issued receipts marked to indicate that they were in full payment of the cost of the care and maintenance of Lottie G. Smith for the month represented by the particular receipt. After February 1931 the receipts clearly show that the payments at the rate of $1.50 per week were made on account of cost of maintenance and care.

The Commonwealth offered undisputed evidence showing the cost of care and maintenance of Lottie G. Smith from March 23, 1918, to September 30, 1948, and the amount that had been paid by her father and her guardian on her behalf. From the evidence in the case we find the difference between the cost of care and maintenance for this patient between the above-mentioned dates and the amount paid by her father and her guardian is $4,712.21.

Defendant does not dispute that the amount the Commonwealth claims is the difference between the actual cost for care and maintenance of Lottie G. Smith and the amount actually paid on her behalf by her father and her guardian, but does deny liability, either in whole or in part, for several reasons:

1. By reason of the conduct of the parties and the lapse of more than 20 years, presumption of payment has arisen, which presumption has not been rebutted.

2. Recovery of that part of the claim arising prior to February 28, 1931, is barred because of the issuance of receipts by the Commonwealth indicating full payment for costs of maintenance.

3. Any arrears due at the time of death of the father, Silas Smith, should have been collected from the father's estate.

That presumption of payment from the lapse of time is applicable to the Commonwealth is not disputed: Ash's Estate, 202 Pa. 422, 424.

"Within the twenty years, the onus of proving payment lies on the defendant; after that time it devolves on the plaintiff to show the contrary, by such facts and circumstances as will satisfy the minds of the jury that there were other reasons for the delay of the prosecution of the claim than the alleged payment. And if these facts are sufficient satisfactorily to account for the delay, then the presumption of payment, not being necessary to account for it, does not arise. Slighter circumstances are sufficient to repel the presumption than are required to take the case out of the statute of limitations, the latter being a positive enactment of the legislature, the former merely an inference on which legal belief is founded": Foulk v. Brown, 2 Watts 209, 215 (1834).

"The presumption of payment from lapse of time is merely a rule of evidence affecting the burden of proof: Ash's Estate, 202 Pa. 422. The true rule is that the presumption does not arise when there are circumstances that sufficiently account for the delay of the creditor in prosecuting his claim: O'Hara v. Corr, 210 Pa. 341": Burwell's Estate, 91 Pa. Superior Ct. 183, 185 (1927).

Has the Commonwealth sufficiently explained the delay in bringing the present action? We believe it has.

Jesse DeEsch, an inspector for the Department of Revenue, testified that there was nothing in the files of the department having the matter in charge to indicate the amount of assets in this estate until a report was filed by the guardian in 1944, after request had been made by the department. It is true that the Commonwealth was notified when the father's estate was before the auditor and also that a report was sent to the Auditor General by the guardian in 1930. The fact

that this information was not in the files of the department having the responsibility for collection at a later date furnishes a rather clear explanation for the delay in instituting proceedings. The guardian did not file yearly reports as required by law. The lack of information which the reports would have furnished further explains the failure to proceed more promptly. A guardian ought not to be allowed to take advantage of his failure to perform his duty.

If the presumption of payment did not arise the many payments on account within 20 years rebutted the presumption: Darlington's Appropriation, 13 Pa. 430.

Defendant does not challenge the amount of the cost of maintenance; defendant does not claim to have paid more than the credit allowed by the Commonwealth; Commonwealth's witness, Jesse DeEsch, testified that the balance has not been paid. The only logical conclusion to be drawn from these facts is that the claim remains unpaid. Proof that the debt remains unpaid rebuts the presumption of payment.

Frey's Estate, 342 Pa. 351, cited by defendant, is not applicable to the present situation. In that case the ward had been dead for more than 30 years before the action was brought. In the present case the ward is still living, an inmate of the hospital, and the account for the cost of her care and maintenance is still open.

We pass to the next question. No receipts are in evidence for the period prior to December 1, 1928. From December 1, 1928, to November 1, 1929, receipts do not specifically say in full payment. It could be argued they show payment on account. The receipts covering period from November 1, 1929, to March 1, 1931, indicate payment in full for the period.

Counsel for defendant cites and relies on Commonwealth v. O'Connor, 22 D. & C. 183, which holds that the Commonwealth is bound by its receipts in full and

cannot recover the difference between the amount paid and the actual cost of maintenance of the inmate. We are unable to agree with this decision. We believe in a case of this type the general principle that a receipt is evidence of payment, but is susceptible of explanation or contradiction, is applicable: Megargel's Administrator v. Megargel, 105 Pa. 475. We approve the reasoning set forth in Wurster's Estate, 22 D. & C. 278. At best the question is academic since the claims against this estate are in excess of the value thereof.

As to the last question we find no authority that required the Commonwealth to proceed against the estate of the father. Undoubtedly, it had the right to do so; but it also had the right to proceed against the estate of the incompetent instead of the estate of the father if it so elected.

"When an attempt is made to collect past maintenance for an insane person from a relative liable for the support of said person, we are of the opinion that the Henning case is still good law. It has never been questioned, however, that the Commonwealth has the right to recover from the property of an insane person moneys advanced for the maintenance of said insane person in a State institution. Particularly is this so since the Act of 1915: Directors of the Poor of Montgomery County v. Nyce, Committee, 161 Pa. 82; Commonwealth v. Baum, 250 Pa. 469; In re Hoffman, 258 Pa. 343; Arnold's Estate, 253 Pa. 517; Walters' Case, 278 Pa. 421": Commonwealth v. Montgomery Trust Co., Trustee, 50 D. & C. 282, 289.

Monroe County intervened in this proceeding for the purpose of presenting a claim for money paid to the Commonwealth on account of the maintenance of Lottie G. Smith. Counsel for the county did not appear at the argument of the case or press the claim.

At this time we have grave doubts as to the right of the county to intervene in this proceeding. How-

ever, it is not necessary to determine this question. The claim is rejected without prejudice to the rights of Monroe County to present and prove its claim at the audit of this estate.

And now, December 5, 1950, the petition is granted and it is adjudged that Frank S. Weiss, guardian of Lottie G. Smith, a weak-minded person, is indebted to the Commonwealth of Pennsylvania, Department of Revenue, in the sum of $4,712.21 as of September 30, 1948, for maintenance and support for the benefit of Lottie G. Smith while confined in the Allentown State Hospital.