## Akers Estate

*Adrian V. Sannier*, for Commonwealth.

*John F. Roney*, for guardian.

MARINO, P. J., December 18, 1964.—We are here concerned with a petition by the Department of Public Welfare, Commonwealth of Pennsylvania, for payment of past maintenance afforded this minor for a period of time from July 18, 1958, to July 24, 1963, in the sum of $719.33, and for an order on the guardian to set aside funds out of the minor's estate for payment of claims for future support and maintenance for said minor by said Department of Public Welfare, presumably until the minor reaches maturity or until her estate is exhausted.

After issuance of a rule, the guardian and all interested parties appeared and a full hearing was entered into. No objection was timely made to the jurisdiction of the orphans' court to dispose of the issues raised. However, the guardian now urges that this court is without jurisdiction over the subject matter, exclusive jurisdiction resting in the court of common pleas, since, it is argued, the claim is in the nature of an assumpsit action, and the minor is entitled to a jury trial. We shall first dispose of this contention.

The guardian cites the Public Assistance Law of June 24, 1937, P. L. 2051, as amended. It is conceded that such Public Assistance Law has now superseded all other statutory enactments on the subject of public assistance. The last pertinent amendments, those of June 19, 1961, P. L. 475, sec. 1, and August 22, 1961, P. L. 1029, sec. 2, 62 PS §1974, now provide: ". . . the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, . . ." and "Any public body or public agency *may sue the owner* of such property for moneys

so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments . . ."

The guardian insists that it is rendered obligatory upon a public body to *sue and secure a judgment* in every case in order to enforce its claim; that the jurisdiction of the orphans' court is therefore ousted because a suit in assumpsit contemplates a jury trial unless there is a proper waiver thereof, and that a jury trial is guaranteed defendant in any event by constitutional mandate.

First, the permissive right to sue and obtain a judgment does not render the remedy obligatory or exclusive. Secondly, the long time jurisdiction of the orphans' court over maintenance claims against the estate of a minor cannot be so summarily ousted. To do so would generally require specific reference and repeals.

As far as maintenance claims against minors are concerned, the act does not offer a permissive remedy in common pleas. The orphans' court has exclusive jurisdiction of such claims. It was early decided that an action cannot be brought in common pleas court against a guardian to charge the estate of a minor for claims for the minor's maintenance. In Johnstone v. Fritz, 159 Pa. 378 (1893), the court said, regarding jurisdiction of the court of common pleas: ". . . the want of jurisdiction is so plain that this court is compelled *suo motu* to take notice of it. The act of 1832 gave the orphans' court exclusive jurisdiction of the estates of minors and of the settlement of the accounts of their guardians; and necessarily of all questions of allowance for maintenance."

Subsequent statutes have continued uninterruptedly to place exclusive jurisdiction in the orphans' court. Section 301(4) of the Orphans' Court Act of August 10, 1951, P. L. 1163, art. III, 20 PS §2080-301(4), is

the present basis of the exclusive jurisdiction of administration and distribution of the real and personal property of minors' estates.

Section two of the Act of 1937, as finally amended by the Act of August 22, 1961, P. L. 1029, simply embraced the designation of the courts competent to hear and determine claims against *living persons* for support. It was not intended as a divestment of the orphans' court jurisdiction to adjudicate claims for maintenance and support against the estates of deceased persons liable therefor, nor of similar claims against estates of minors: Stoner Estate, 358 Pa. 252.

This view has been followed in many cases. In Blum's Estate, 38 D. & C. 588, the jurisdiction of the orphans' court was challenged as well as the matter of first securing a prior judgment in common pleas court. Both contentions were rejected. It was there held that an award to the respondent-distributee was tantamount to a judgment, and that order of reimbursement of the Commonwealth claim was properly made by the orphans' court without the necessity of a supporting judgment in common pleas court. In Jacobs Estate, 72 D. & C. 504, the orphans' court ordered reimbursement out of a trust fund without first securing a prior judgment. To the same effect are Commonwealth v. Smith, 344 Pa. 381; Gellnek Estate, 75 D. & C. 219, and In re Youngblood, 78 D. & C. 470.

Respondent further insists that the guardian is entitled to a jury trial on the questions of fact presented, and consequently the action in assumpsit in common pleas was intended to be all-inclusive, thereby divesting the orphans' court of jurisdiction in the matter. But this argument assumes that a jury trial cannot be had in orphans' court. Such is not the case. While formerly the orphans' court directed issues of fact to the common pleas court for jury trial, the procedure was changed by the Act of July 1, 1937, P. L. 2665,

amending section 21 of the Orphans' Court Act of 1917, and provided for jury trials, in proper cases, in the orphans' court for determination of factual issues. With the exception of a minor change in 1939, this act remained in effect until the present law on the subject was enacted in 1951. See section 745 (c) of Orphans' Court Act of 1951, as amended by Act of July 14, 1961, P. L. 610. It is now provided that the verdict of a jury so impaneled shall be advisory only. One desiring trial by jury, of factual issues, is required to make a demand therefor in writing at least 10 days prior to the initial hearing before the court. See section 745 (d). In the instant proceeding no written demand was ever made, and the oral suggestion was not timely made. We are therefore not constrained to decide whether a jury trial was available at the guardian's request in the case at bar.

Having decided that this court has jurisdiction over the parties and the subject matter, the further inquiry remains: did the Commonwealth introduce proper evidence to prove its claim? Welfare or assistance grants to the whole family of the minor were adequately shown. The proportional share allocable to this minor was one-fifth of the total. This method of proving the share of the minor was objected to by counsel. Objection was overruled as the exact point was raised in Reiver's Estate, 343 Pa. 137, 142, where the Supreme Court said: ". . . the amount of the grant is determined by the number of children, and it may fairly be assumed that each of them derives therefrom an equal benefit, . . ."

In the instant case, credit was given by the Commonwealth for work done by the father of this minor, Frank Akers, who worked occasionally for the municipality in which he and his family resided, under an agreement between the State and the municipality whereby persons receiving assistance grants might

repay certain sums by performing manual labor for the municipality. The father earned credits of $849.75 in this manner, leaving a balance due of the sum of $719.33. It is recognized that the Commonwealth has adequately proved its claim and that the minor's estate has sufficient assets to pay the claim.

But there are facets of this situation which cry for a chance to reflect what little light is possible in aid of this unfortunate little colored girl already bereft of one of her mainstays in life, her left leg, which was amputated just below the hip as a result of the unfortunate accident in which she was involved about six years ago. She is now making her home with her maternal grandmother, her mother and father having separated, and her mother moved to the State of Kentucky. She attends high school daily and appears to be an active, well-adjusted young girl.

However, she has had more than her share of ill fortune. Early this year she was stricken with a kidney ailment which necessitated her securing hospital treatment. She was confined to the Children's Hospital of Pittsburgh for an entire month. Her hospital bill alone is over $1,100; one doctor has rendered a statement for services in the amount of $150; another doctor asks the sum of $100. Her artificial limb became useless by reason of usual wear and damage, as well as the fact that the girl is now in a period of fast physical growth. A new limb was recently ordered; it costs more than $700; the average life of same is only two to three years. Her grandmother is elderly and without means; a maintenance allowance must be provided.

Unless measures are devised to help preserve this minor's estate, it will surely be completely exhausted before she comes of age. With her physical disability to contend with, her situation would be tragic indeed. The only measure of assistance now within the court's

power is to prevent the Commonwealth presently from recouping its assistance grant. We believe the court has the power to do this in protecting its ward. When equitable considerations so dictate, a court may withhold execution on a valid judgment. Our contemplated action is tantamount to withholding execution on the claim of the Commonwealth in this instance, although the claim has been adequately proved.

The father of this child is legally responsible for her maintenance. He has already earned credits of $849.75 by contributing his work to the municipality; he should be exhorted to continue his contribution when he finds himself otherwise unemployed. Unless this measure is taken, the credit will be forever lost to this young girl.

We will not require the Commonwealth to prove its claim at any future time, as the proof adduced herein was entirely adequate. But payment of the claim will be withheld pending further work credits awarded to her father, Frank Akers. The Commonwealth may make a reapplication when circumstances so warrant.

As to setting aside a portion of this estate for any possible future assistance grants, such request is refused; the Commonwealth would not be justified in making continued assistance grants while the minor has an estate of her own.