

# THE ATTORNEY GENERAL

## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

July 19, 1965

*affirmed by*
*M-274*

Mr. John H. Winters
Commissioner
State Department of Public Welfare
Austin, Texas

Opinion No. C-464

Dear Mr. Winters:

Re: Constitutionality of Senate Bill 163,
Acts 59th Legislature, 1965, the
"Economic Opportunity Act of 1964."

You have requested an opinion from this office concerning the constitutionality of Senate Bill 163, Acts 59th Legislature, 1965, ch. 111, p. 266, the "Economic Opportunity Act of 1964". In connection with the foregoing you have stated that the:

". . . Comptroller of Public Accounts has raised a question as to the validity of the programs authorized by Senate Bill No. 163 . . . and has questioned the authority of the Department to expend the funds deposited in the State Treasury for the operation of the programs."

Senate Bill No. 163 provides in the caption the following:

"AN ACT amending Senate Bill No. 36, Page 544 General Laws of the State of Texas, 46th Legislature, Regular Session, 1939, as amended by House Bill No. 611, Chapter 562, Page 914, General and Special Laws of the State of Texas, 47th Legislature, Regular Session, 1941, as amended, which is codified as Article 695c, Vernon's Texas Civil Statutes, by adding a new Section to be known as Section 6-A, designating the State Department of Public Welfare as the State Agency to cooperate with the Federal Government in the administration of the provisions of Title V of the 'Economic Opportunity Act of 1964' and of the provisions of any such other applicable titles of said

-2207-

Act, or any such other titles as may be added thereto; authorizing the State Department of Public Welfare to cooperate with the Department of Health, Education, and Welfare or any other Federal Agency authorized to administer such Act, and to cooperate with any existing state or local agencies or departments in carrying out the purposes of this Act; authorizing the State Department of Public Welfare to set up and administer, in accordance with reasonable rules and regulations promulgated by the Department, any experimental, pilot, or demonstration projects authorized in the Act; authorizing the Department to take all necessary steps for the proper administration of the program; authorizing the State Department of Public Welfare to accept and expend any Federal moneys allocated to the said Department for any projects or programs established to carry out the purposes of this Act and for administrative expenses and/or any other expenses incident to the administration of said projects or programs; amending Section 2 of Article XX, Chapter 184, Acts of the 47th Legislature, Regular Session, 1941, as amended, by adding a new Subsection to be known as Subsection (8); providing a repealing clause; a savings clause; and declaring an emergency."

Section 6-A (a) provides:

"The State Department of Public Welfare is hereby designated as the State Agency to cooperate with the Federal Government in the administration of the provisions of Title V of the 'Economic Opportunity Act of 1964' and of the provisions of such other applicable titles of the 'Economic Opportunity Act of 1964' as are now provided or as may be added thereto from time to time in the event no other State Agency is by law designated to cooperate with the Federal Government in the administration of the provisions of such title or titles as may be added to said Act, and the Department is directed to enact and promulgate such rules and regulations as may be necessary to effect the cooperation as herein outlined and designated.

"The State Department of Public Welfare is hereby authorized and directed to take all necessary and proper action to administer the programs contemplated in Title V and such other applicable titles of said Act and to cooperate with the proper Departments of the Federal Government and with all other Departments of the state and local governments in the enforcement and administration of such provisions of the 'Economic Opportunity Act of 1964' and any amendments thereto and/or any other related Federal Acts enacted for the purpose of carrying out the provisions of the 'Economic Opportunity Act of 1964' and any amendments thereto, and the rules and regulations issued thereto and in compliance therewith, in the manner prescribed in this Act or as otherwise provided by law."

Section 2 provides:

"The State Department of Public Welfare is authorized to accept and expend any Federal moneys allocated to the said Department for any projects or programs established for the purpose of carrying out the provisions of this Act and for administrative expenses and/or any other expenses incident to the administration of said projects or programs.

"The State Department of Public Welfare is authorized to receive and expend funds from the State, counties, and cities and from any other source for the purpose of carrying out the provisions of this Act.

"The Department shall deposit all such funds irrespective of source in the Special Fund hereinafter created in the State Treasury, and such funds shall be subject to withdrawals upon authorization of the Commissioner of Public Welfare, and all such funds deposited in said Special Fund in the Treasury are hereby appropriated to the State Department of Public Welfare."

Section 3 provides:

"Section 2, Article XX of Chapter 184,
Acts of the 47th Legislature, Regular Session,
as amended, is hereby amended by adding a
new subsection to be known as Subsection (8),
and said amendment shall be contingent upon
and effective at such time as appropriations
for such purpose of carrying out the provisions
of this Act are authorized by the Federal
Government and appropriated and allocated to
the State Department of Public Welfare by
the Department of Health, Education, and
Welfare and/or any other Federal Agencies
authorized by law to carry out the provisions
or the purposes of this Act and said Subsection
(8) shall read as follows:

"(8) There shall be <u>created in the State
Treasury a Special Fund known as the 'Economic
Opportunity Fund - Welfare,'</u> and all funds
received from the Federal Government and/or
from any other source for the purpose of
paying the cost and the administrative
expenses incident to the projects or programs
coming within the scope of this Act shall
be deposited in said Special Fund in the
Treasury subject to withdrawals upon
authorization by the Commissioner of Public
Welfare." (Emphasis added)

Section 6 provides:

"The fact that the Congress of the United
States has enacted the 'Economic Opportunity
Act of 1964' for the purpose of alleviating
poverty in these United States by strengthening,
expanding, and providing opportunities to
individuals for education, training, and work;
the fact that Federal Funds have been appropriated
and allocated to the Department of Health,
Education, and Welfare to be made available to
states for projects which will provide work
experience and needed training for persons who
are unable to support or care for themselves
or their families; the fact that the State of
Texas is desirous of cooperating to the fullest
extent in achieving the best possible results
from participation in such programs; . . ."

Prior to the enactment of Senate Bill 163, the United States Congress enacted Public Law 88-452, also known as the "Economic Opportunity Act of 1964", which was approved on August 20, 1964. As stated in your letter:

". . . the purpose of this Law was to eliminate poverty by giving needy persons an opportunity for education, training, and work, and this purpose was to be accomplished through grants from the Federal Government to the States on the basis of approved projects or agreements."

Title V of Public Law 88-452, which is referred to in Senate Bill 163, authorizes programs designed to help needy persons and designates the Department of Health, Education and Welfare as the Federal Agency responsible for carrying out the provisions of Title V. Section 502 of Title V of Public Law 88-452 provides in part that:

"In order to stimulate the adoption of programs designed <u>to help unemployed fathers and other needy persons to secure and retain employment or to attain or retain capability for self-support or personal independence</u>, the Director is authorized to transfer funds appropriated or allocated to carry out the purposes of this title to the Secretary of Health, Education, and Welfare to enable him to make payments for experimental, pilot, or demonstration projects under section 1115 of the Social Security Act. . . ."

We can see from a reading of these portions of Senate Bill No. 163 that the intention of the Legislature was to put into effect the necessary plans and law to carry out the Economic Opportunity Act of 1964.

53 Tex.Jur.2d 180, Statutes, Sec. 125, provides:

"The intention of the legislature in enacting a law is the law itself, the essence of the law, and the spirit that gives life to the enactment. It is the duty of the courts to give full recognition to the legislative intent. Hence, the aim and object of construction is to ascertain and enforce the legislative intent, and not to defeat, nullify, or thwart it.

"When the intent is plainly expressed in the

language of a statute, it must be given effect without attempting to construe or interpret the law.

"On the other hand, when it is necessary to construe an act in order to determine its proper meaning, it is settled that the court should first endeavor to ascertain the legislative intent, from a general view of the whole enactment, and the enactment alone. The intent having been ascertained, the court will then seek to construe the statute so as to give effect to the purpose of the Legislature, as to the whole and each material part of the law, even though this may involve a departure from the strict letter of the law as written by the legislature. This is the fundamental canon and the cardinal, primary, and paramount rule of construction, which should always be closely observed and to which all other rules must yield. Indeed, in the construction of civil enactments, the courts are expressly commanded to look diligently for the intention of the legislature, keeping in view at all times the old law, the evil, and the remedy. And this rule is equally applicable in the construction of penal statutes.

"Under the foregoing rules, when the legislative intent is ascertained, or is plainly manifest, it is binding on the courts and must be given effect if it is legally possible to do so. To ignore the legislative intent and give a statute a construction obviously contrary thereto, or to refuse to enforce a statute according to the legislative intent, when ascertained, is an inexcusable breach of judicial duty and an unwarranted interference with the exercise of lawful legislative authority."

53 Tex.Jur.2d 278, Statutes, Sec. 185, provides:

"Broadly speaking, a statute will be construed with reference to the entire body of law existing at the time of its enactment,

insofar as this may be necessary to ascertain or effectuate the legislative intent. Thus, a statute will be construed in the light of the constitution, the common law, international law, and existing statutory law. More particularly, a statute will be construed with reference to the general system of legislation of which it forms a part. And an act that is but declaratory of existing law will be so construed where substantial doubt arises as to its meaning.

"A statute will be construed so that it will harmonize with other existing law, unless its provisions clearly manifest a contrary intention. Thus, where the literal language of one act conflicts with that of another, they should be read together and harmonized, if reasonably possible, so as to give effect to each of them."

In Friedman vs. American Surety Company of New York, 137 Tex. 149, 151 S.W.2d 570, (1941), and on page 580 of said opinion, it is stated:

". . . It is the exclusive right and duty of the legislative branch of government to determine the wisdom of legislation. The judicial branch has no right or power to invade that legislative prerogative. It is not only the right, but it is the duty of the judicial branch to determine whether or not a legislative Act contravenes or antagonizes the fundamental law; and in determining such we are unalterably wedded to the principle that the Constitution means what it meant when it was written. In spite of this, a statute is presumed to be constitutional, and every reasonable doubt as to the validity of an Act must be resolved in its favor. . . ."

The question has now arisen as to whether Senate Bill No. 163 is constitutional, and more specifically, whether certain projects or programs of the State Department of Public Welfare, pursuant to Senate Bill No. 163 and Public Law 88-452, are in violation of Section 51 of Article III of the Constitution of Texas. The specific program or project in question concerns grants to be made to the mothers of dependent children.

Mr. John H. Winters, Director of the Department of State Welfare, states in his letter the following:

"The State Department of Public Welfare is required under Federal Laws and under rules and regulations promulgated by the Department of Health, Education, and Welfare to file basic Plans of Operation with the Federal Agency before implementing any programs or projects coming within the scope of the Social Security Act for which the State receives Federal grants. These basic Plans of Operation constitute agreements or contracts with the Federal Government.

"On March 15, 1965, the State Department submitted a project and requested funds in accordance with Title V of the 'Economic Opportunity Act of 1964' (Public Law 88-452). This Project was designated as the Texas Project No. 1 under Title V of the Economic Opportunity Act. This Project was approved by the Department of Health, Education, and Welfare on April 12, 1965, and the funds received by the State Department in advance for the operation of the project were deposited in the State Treasury."

In 81 C.J.S. 98, Social Security, Sec. 58, it is stated:

"A mother's pension act is of a remedial nature and should be liberally construed."

In the case of In Re Reivers Estate, 22 Atl.2d 655, (Pa.Sup. 1941) wherein the Commonwealth of Pennsylvania had sued to recover funds paid to the mothers of dependent children, one of which children had financial resources of its own, which funds had been expended on such child, the Court stated:

"Those acquainted with the history or background of this legislation knows that it was intended not to assist the mother as an individual or widow, but solely to enable her to give her indigent children the shelter, clothing, food and care necessary to maintain them in their own home. . . ."

and on page 657 of said opinion it is stated:

".  .  .Section 10 of the Act of August 7,
1936, 1st Ex.Sess., P.L. 118, amending Section
18 of the Act of July 10, 1919, P.L. 893,
indicates who the real beneficiaries of this
legislation are in that it authorizes the
Department of Welfare to receive contributions
from the federal government 'for aid to dependent
children eligible for assistance under this act.'
Indeed, the Public Assistance Law of June 24,
1937, P.L. 2051, 62 P.S. 8 2501 et seq., which
has now superseded all other acts on the subject
provides for assistance to dependent children (a
dependent child being defined as any child under
the age of sixteen who resides with his mother
and has been deprived of the support of his
father by his father's death, continued absence
from home, or physical or mental incapacity),
and makes no provision at all for payments to the
mothers of such children, although in practice
the remittances are still made to the mothers as
quasi trustees instead of directly to the minor
children themselves.  .  .  ."

The funds for implementation of the planned project
or program, presently deposited in the Treasury of the State
of Texas in a special fund known as the "Economic Opportunity
Fund-Welfare", consist entirely of Federal funds paid to the
State Department of Public Welfare for carrying out the planned
projects or programs.

The provisions of Section 51 of Article III of the
Constitution of Texas provides in part that:

"The Legislature shall have no power to make
any grant or authorize the making of any grant of
public moneys to any individual, association of
individuals, municipal or other corporations
whatsoever; .  .  ."  (Emphasis added)

The foregoing constitutional provision contains certain
exceptions whereby the Legislature was authorized to grant aid
to indigent and disabled soldiers and sailors who served in
the Confederacy, and to the widows of such soldiers or sailors
who were in indigent circumstances.

In addition to the exceptions contained in Section 51
of Article III of the Constitution of Texas, there have been
subsequent amendments to the Constitution of the State of Texas
which authorizes the Legislature to provide assistance to
needy aged persons who are over the age of sixty-five (65),

needy individuals between the age of eighteen (18) and sixty-five (65) who are totally and permanently disabled, needy blind persons over the age of twenty-one (21), and needy children under the age of sixteen (16). Section 51-a of Article III of the Constitution of Texas.

Section 51-a of Article III of the Constitution of Texas provides in part that:

"The legislature shall have the power, by General Laws, to provide, subject to limitations and restrictions herein contained, and such other limitations, restrictions and regulations as may by the Legislature be deemed expedient, for assistance to, and for the payment of assistance to:

". . .

"(4) Needy children who are actual bona fide citizens of Texas, and are under the age of sixteen (16) years; . . ."

The Legislature, acting under the authority of this constitutional provision, has enacted statutory provisions which are codified by Vernon in Title 20A as Section 17 of Article 695c, which read in part:

"Sec. 17. Aid to Families with Dependent Children shall be given under the provisions of this Act with respect to any dependent child. 'Dependent Child' is any needy child:

". . .

"(3) Who is under the age of sixteen (16) years; and

"(4) Who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent; and

"(5) Who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, niece, in a place of residence maintained by one or more of such relatives as his or their own home; and

". . ." (Emphasis added)

It is evident that the State Department of Welfare and the Comptroller of Public Accounts has construed this Statute as giving aid to dependent children, although the Act states that the aid is given to families with dependent children. This departmental construction is entitled to great weight, and is in harmony with the case of Re Reivers Estate, supra.

It is noted that the constitutionality of the above mentioned statute has never been questioned, and this Act has been in effect since 1941, whereby the State has aided families with dependent children, under the age of 16 years, for a period of 24 years.

From a reading of Sec. 6-A(a) of S.B. 163, supra, it is noted that the State Department of Public Welfare is authorized and directed to take all necessary and proper action to administer the programs under the Economic Opportunity Act of 1964, one of which programs is grants to be made to the mothers of dependent children.

Furthermore, on November 4, 1958 the Constitution of Texas was amended by the addition of Subsection 51a-1, which provides in part:

"The Legislature shall have the authority to accept from the Federal Government of the United States, such financial aid on behalf of the needy aged, needy blind, needy children, and needy permanently and totally disabled persons as such Government may offer not inconsistent with restrictions herein set forth." (Emphasis added)

We are therefore of the opinion that grants to be made to the mothers of dependent children, are in effect, grants to dependent children, and therefore this specific program does not violate Section 51 of Article III of the Constitution, as it is authorized by virtue of the provisions of Section 51-a and Subsection 51a-1 of Article III of the Texas Constitution.

## SUMMARY

Under the facts submitted, grants to be made to the mothers of dependent children by virtue of Senate Bill 163, Acts of the 59th Legislature, will not violate the provisions of Section 51 of Article III of the Texas Constitution as such grants are au-

Mr. John H. Winters, page 12 (C-464)


thorized to be made under the provisions of Section
51-a and Subsection 51a-1 of Article III thereof.

Very truly yours,

WAGGONER CARR
Attorney General

By John H. Banks
Assistant

JHB:ml:mkh:sj

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Harold Kennedy
Roger Tyler
J. C. Davis

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright