## Commonwealth of Pennsylvania, Department of Public Assistance, Appellant, *v.* Hornacek.

Argued May 10, 1943. Before MAXEY, C. J.; DREW, STERN, PATTERSON, PARKER and STEARNE, JJ.

*M. Louise Rutherford,* Deputy Attorney General, with her *Jacob L. Aaron,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, and *Harry W. Lightstone,* for appellant.

*Henry Houck,* for appellee.

OPINION BY MR. JUSTICE PARKER, June 30, 1943:

This action in assumpsit was brought to recover certain amounts paid to defendant by way of public assistance and the appeal is by the Commonwealth from the refusal of the court below to enter judgment for it for want of a sufficient affidavit of defense. The controversy involves an interpretation of sections of the Public Assistance Law of June 24, 1937, P. L. 2051, as amended (62 PS 2501 et seq.) and the Support Law of June 24, 1937, P. L. 2045, as amended by Act of June 9, 1939, P. L. 310 (62 PS 1971 et seq.). Since the Attorney General has taken this appeal in view of a contrariety of opinion among the courts in the different counties and an important matter of statutory construction is involved, we will discuss the matter more fully than would otherwise be necessary.

In its statement of claim the Commonwealth alleged that it paid to the defendant between July, 1937, and August, 1939, $553.40 pursuant to the Public Assistance Law, that defendant "owns real and personal property of the approximate value of Eleven Hundred . . . . .

Dollars", that defendant on demand refused to repay any part of the payments made, and that by §4 of the Support Law defendant is liable for the repayment of the assistance given her.

The defendant answered that while payments were made to her and she owns property as alleged, the payments were made to her "for and on behalf of her two dependent children, Robert and Edward". She denied that any of such payments were made to her as "general assistance" or for herself or on her behalf. She also set forth various facts by way of new matter to which plaintiff replied. For the present it is not necessary to refer to the new matter pleaded except to say that she denied that she was an indigent person during the period in controversy and the Commonwealth answered that in her application for relief she had represented to the Commonwealth "that she was financially unable to care for and maintain her said children, thus representing herself to be an indigent person".

By §9 of the Public Assistance Law (62 PS 2509) persons eligible for relief are divided into five classes: (a) dependent children, (b) aged persons, (c) blind persons, (d) other persons who are citizens of the United States who need assistance to enable them to maintain for themselves and their dependents a decent and healthful standard of living and who do not require institutional care because of physical or mental infirmity, (e) any of above classes who have quasi-settlement in the Commonwealth until removed to their place of legal settlement.

Section 3 of the Support Law (62 PS 1973) provides: "(a) The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall, *if of sufficient financial ability,* care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides, shall order or direct" [Italics supplied], and §4 of the same act (62 PS 1974) provides that "the real and

personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred" and that any public body or public agency may sue for moneys so expended.

The court below refused to dispose of the contest on the pleadings and properly so. The Public Assistance Law recognizes a distinction between "general assistance" and assistance given dependent children and provides for assistance for dependent children who may be living with a relative even though they are being maintained by such relative. The pleadings raise a clear issue of fact as to whether the payments were made to Mrs. Hornacek for her own account, for her and the children's account, or exclusively for the benefit of the children. Even though the payments were made to her, a widowed mother, they may not have been "for her own maintenance but for that of her indigent children, she rendering them the same service that an institution or child-caring agency would provide but with the added devotion expressive of a mother's love": *Reiver's Est.*, 343 Pa. 137, 141, 22 A. 2d 655. In fact, the plaintiff's statement shows that the payments made were cut almost in half when the elder of these children reached the age of sixteen.

If these payments were made to Mrs. Hornacek for her own account and she had property at the time the expenses were incurred (§4, Support Law), she is liable for repayment to the extent of such advances and property: *Reiver's Est.*, supra. At common law there is an implied duty on the part of a recipient of public assistance to make reimbursement if able to do so: *Waits Est.*, 336 Pa. 151, 7 A. 2d 329.

Likewise, if these payments were for the benefit of the children at a time when the children possessed estates of their own, their estates would be liable for the assistance given: *Reiver's Est.*, supra.

. Mrs. Hornacek in her affidavit of defense alleged that the payments were made exclusively for the benefit of her children. The Attorney General contends that even under such circumstances she is liable under §4 of the Support Law. The liability for support is fixed by that law but that is not what the statute provides. The real and personal estate of an indigent is made liable for repayment of public assistance given such a one, but a widowed mother is only liable for the repayment of assistance given her dependent children if she is "of sufficient financial ability" and is so when the expenses are incurred. The mother denies that she was an indigent and it may well be that from her property and by her earnings she could have supported herself and was not able to support the children, but the state, pursuant to a well established policy, determined that it was for the children's and its own interest that the children should be maintained in a home where she would remain and mother them.

All doubt is removed when we consider the very words of §3 which makes the mother liable for support of the children only "if of sufficient financial ability". The state may recover from the widowed mother, if she has property, such assistance as was given for her own support. It may recover such assistance as was expended for the children only if she was of sufficient financial ability at the time the aid was given. If the mother has only the financial ability to support herself and the state sees proper to require her to remain home and there care for her children in a manner which the state has determined is for the benefit of the children, it amounts to assistance given the children for which their estates are liable but hers is not. The mother was not liable for the support of her children unless she was financially able to support the children in addition to supporting herself. She has averred that she was not.

The court could not say as a matter of law that the ownership by Mrs. Hornacek of property of the value of

$1,100.00 required a finding that she was of sufficient financial ability to care for the two children and herself. For all the record shows this property may have consisted of a very modest home and household goods. We have no information as to the mother's circumstances or earning power. These are proper matters for consideration on trial of the case.

There is an additional reason which clearly justified the action of the court below. By §4 of the Support Law as amended the mother's property is liable for expenses of assistance "if such property was owned during the time such expenses were incurred". There was no such allegation in the statement of claim. It merely averred that she owned property on January 7, 1941, long after these payments were made.

The order of the court below is affirmed.