Department of Public Assistance of the Commonwealth of Pennsylvania *v.* Sharago, Appellant.

Argued January 13, 1955. Before STERN, C. J., JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Edward F. Muller, Jr.,* with him *Guy W. Davis,* for appellants.

*Jacob L. Aaron,* Special Deputy Attorney General, with him *Samuel M. Tollen, M. Louise Rutherford,* Deputy Attorney General and *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 14, 1955:

The Commonwealth of Pennsylvania seeks in this case, through the Department of Public Assistance, to collect from Mrs. Sallie Sharago, a 72-year-old widow, $1,181.74 which admittedly she never received, never contracted to pay, and benefits from which never entered her sphere of enjoyment. For the State to impose such a palpable injustice requires specific authority in law which cannot be found in all the books of Pennsylvania.

The untoward situation arose as follows: In March, 1947, Samuel Sharago, who was living apart from his

elderly wife, made application for public assistance and, by August, 1951, received the total sum of $1,-181.74. He died on May 6, 1952. Through an action in assumpsit begun prior to Mr. Sharago's death, the Commonwealth obtained a judgment against his widow in the sum of $1,181.74. She appealed.

In paragraph 2 of the plaintiff's Complaint in Assumpsit, the Commonwealth states: "Under Section 4 of the Act of June 24, 1937, P. L. 2045, known as 'The Support Law' the real and personal property of a public assistance recipient is liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred or if the right to ownership of such property existed or was acquired during the time such expenses were incurred."

By this statement the Commonwealth admits that it is the real and personal property of the *public assistance recipient* that is to be held accountable for the moneys paid by the Department. But Mrs. Sharago was not a public assistance recipient.

In speaking of property liable for repayment of public assistance, Section 4 of The Support Law specifically refers to the real and personal property of an *indigent*. Mrs. Sharago is not an indigent in that statutory sense.

In *Reiver's Estate,* 343 Pa. 137, 138, we said: "Where the State, under legislative authority, has provided maintenance for an indigent person, and it subsequently appears that the *beneficiary* has an estate or property of his own, the Commonwealth is entitled to recover from *him* the moneys expended on his behalf." (Emphasis supplied).

Mrs. Sharago could only be liable if during her husband's lifetime she dishonestly held herself out as be-

ing financially unable to support him and thus induced the Commonwealth to pay moneys to him which, under Section 3 of The Support Law, she would herself have been compelled, through Court, to pay. However, the record is bare of evidence that she was "of financial ability" to care for and maintain her husband. During the time that her husband was the beneficiary of a grant of public assistance, Mrs. Sharago did not own any property. She only had an estate in entireties in a property owned by herself and husband. But the ownership of an entirety interest is not that kind of financial ability contemplated by the Act of 1937 which requires persons within a certain family relationship to support indigent kin.

The Commonwealth leans heavily, as indeed the lower Court did also, on the case of *Commonwealth of Pennsylvania v. Hornacek,* 347 Pa. 596, in support of its position. That case, however, can more aptly be cited in substantiation of the defendant's position. There the Department of Public Assistance sued to recover from Mrs. Hornacek the sum of $553.40 which had been paid to her, although at the time she was the owner of a property valued at $1100. Mrs. Hornacek admitted owning the property in question but stated that the payments were made to her "for and on behalf of her two dependent children." This Court pointed out that if the payments were made to Mrs. Hornacek for her benefit and she owned property at the time she would be liable for repayment. If, on the other hand, the payments were made for the benefit of the children and they at the time possessed estates of their own, those estates would be liable for the money paid. However, neither of those hypotheses obtained. Mrs. Hornacek had received the money for the benefit of her children and they had no property of their own. The Attorney General argued that even under those circumstances

Mrs. Hornacek was liable under Section 4 of The Support Law. But this Court rejected the Attorney General's contention and held: "If the mother has only the financial ability to support herself and the state sees proper to require her to remain home and there care for her children in a manner which the state has determined is for the benefit of the children, it amounts to assistance given the children for which their estates are liable but hers is not. The mother was not liable for the support of her children unless she was financially able to support the children in addition to supporting herself."

In the case at bar there is no evidence that Mrs. Sharago was financially able to support her husband "in addition to supporting herself." We also said in the *Hornacek* case: "For all the record shows this property may have consisted of a very modest home and household goods. We have no information as to the mother's circumstances or earning power." We have no information in the case at hand as to Mrs. Sharago's circumstances or earning power. The fact that she was 70 years of age at the time the grant of assistance was made to her husband would argue rather convincingly against any earning power.

The eleventh finding of fact promulgated by the court below reads: "During the period from March 13, 1947, to August 16, 1951, when the husband-defendant was receiving public assistance, the wife-defendant was financially able to support him."

A meticulous reading of the record fails to discover even a shadow of the thinnest reed supporting so weighty a conclusion. It obviously floats in the unsubstantial air of speculation and surmise and therefore cannot be accepted.

Judgment reversed.