## Commonwealth v. Allison

*Edward F. Peduzzi*, for Commonwealth.

*Spence, Custer, Saylor & Wolfe*, for defendants.

McDONALD, J., March 11, 1957.—Plaintiff filed a complaint in assumpsit under section 4 of the Support

Law, Act of Assembly, approved June 24, 1937, P. L. 2045, 62 PS §1974, demanding judgment against the defendants for public assistance. Defendant, Harvey R. Allison, in his Answer and New Matter, denied liability for the reason that the assistance was given to his wife, the codefendant, she having left him without reasonable cause. There is no averment in the pleadings as to his financial ability to support his wife. Upon trial, the jury returned a verdict in favor of plaintiff against both defendants. Harvey R. Allison filed motions for new trial and judgment n. o. v. In addition to the usual reasons cited in such motions, he contends his liability for the support of his wife must first be determined by petition and order in the quarter sessions court under section 3 of the aforesaid act. He further contends the statute upon which suit is based is unconstitutional.

At the time assistance was received by Mrs. Allison, defendants had been separated for several years. They were married in 1934 and lived together, except for certain periods of separation, until 1945. She voluntarily left the common habitation at that time, claiming as justification for leaving that he had failed to provide adequate support, drank heavily, at which time "he talked pretty dirty", and had told her that anytime she did not like it she could leave. Her daughter by a previous marriage, Mrs. Esther Sandak, testified it was necessary for her to provide all her mother's clothing and that she had continuously provided her food on weekends, during the time the parties were living together.

In defense, Mr. Allison testifies he had provided adequate support and a home for his wife, that he had not abused her and she had no cause for leaving. He said that after she left, he asked her to return, or make a property settlement in which he offered her $500. Roy J. Folckmer, a neighbor; Dorothy Ruth

Fallier, Mr. Allison's daughter by a previous marriage, and George Fallier, her husband, testified they had not observed any abuse of Mrs. Allison by Mr. Allison.

Mrs. Allison applied for and received assistance on December 19, 1950. Since that date, according to the testimony, she has received $3,224.60.

Mr. Allison is 67 years of age, blind, and has been receiving assistance as a blind person from plaintiff since 1955. He now owns and did own during the time his wife received assistance, real estate situate in Richland Township, Cambria County, upon which two houses are constructed. There is no testimony as to the value of this real estate or of his financial ability to support his wife during the time she received public assistance.

The jury was charged specifically on (1) the general rule with regard to the liability of a husband for the support of his wife; (2) the exception to this general rule when a wife commits acts which amount to a valid cause for divorce; (3) justification of a wife in leaving the common habitation and the concomitant liability of a husband for support; (4) the effect of a bona fide offer of reconciliation on the support liability of a husband. The evidence raised a factual question of whether or not Mr. Allison was liable for the support of his wife. This was the primary issue. In resolving it, the attention of the jury was directed to the law as above charged. We are satisfied there was sufficient competent evidence to submit this question to the jury and that the verdict was proper and just. Therefore, the motion for new trial must be dismissed.

In his motion for judgment n. o. v., Mr. Allison contends plaintiff must proceed under section 3 of the Support Law, to secure an order of support taking into consideration his financial ability to pay, before commencing suit under section 4 to obtain a judgment.

No such action was taken by Mrs. Allison or the plaintiff.

Section 3 defines the liability of persons in certain relationships for the support of an indigent and authorizes any public body or public agency interested in the care, maintenance, or assistance of such a person to file a petition. An order thus made must consider the financial ability of the defendant to pay. It may be enforced by attachment. The court of quarter sessions has jurisdiction under this section.

Section 4 as amended by Act of Assembly, approved September 26, 1951, P. L. 1455, 62 PS §1974, provides, inter alia:

"(a) The real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred. . . ."

Prior to the amendment of 1951, this section provided, inter alia:

"(a) The real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred. . . ." The court of common pleas has jurisdiction under this section.

Prior to 1951, even though one owed a duty of support, under the common law or statutory provision, to an indigent who was receiving public assistance, an action under section 4, to enforce reimbursement by securing a judgment against the real and personal

property of that person, was not proper. Such an action was limited to a judgment for assistance granted to an indigent person who was a property owner: Commonwealth v. Sharago, 381 Pa. 74; Commonwealth v. Hornacek, 347 Pa. 596; Commonwealth v. Bauman, 59 Montg. 191; Commonwealth Department of Public Assistance v. Galligar, 35 Del. Co. 140; In re Briggs' Estate, 35 Del. Co. 47. A host of other lower court cases support this view. Almost universally, the courts held that reimbursement for assistance to an indigent who was owed a duty of support by one within a certain relationship could only be required if the Commonwealth proved such person had the financial ability to pay when the assistance was granted: Commonwealth v. Sharago, supra; Commonwealth v. Hornacek, supra. This is consistent with the general law of restitution: A. L. I. Restatement of the Law of Restitution, §76, page 331. Thus, reimbursement in such cases does not depend upon statutory authority, but rather on the general law of this Commonwealth.

The above cited cases, all prior to 1951, involve claims against a property owner for assistance given an indigent dependent. In most cases the defendant was not an indigent. The courts held, and we think properly under the facts, (1) that judgment for restitution or reimbursement was not valid unless at the time assistance was given, the property owner was of sufficient financial ability to discharge his duty of support; (2) that section 4 applied only to cases involving assistance to an indigent person who was a property owner. Unfortunately, plaintiff, Department of Public Assistance, took the position that section 4 was the proper statute under which to bring such an action. It argued that assistance given a dependent indigent was in effect given the one primarily obligated to support the indigent. Therefore, the Common-

wealth theorized, since it was discharging this obligation it was entitled to use the proceeds under section 4 to make the real and personal property of that person liable for reimbursement regardless of his financial ability. This position was clearly untenable prior to the amendment of 1951 in view of the limitation in that section as originally enacted, to an action against the property owner for assistance which he (only) received as an "indigent person".

These decisions, however, failed to distinguish between the purpose of an action under section 4 and an action in assumpsit for restitution under the general law. As a result, the language used seems to imply that even under section 4 there must be proof of the financial ability of a property owner to support the dependent recipient of assistance as a condition precedent to judgment. It is our opinion the amendment of 1951 intended to broaden the right of the Commonwealth to reimbursement, thereby providing a remedy for the Commonwealth which eliminates the necessity of proving the property owner was of sufficient financial ability to discharge his duty of support in such cases.

The language of section 4 is clear and explicit. If one owes a duty of support to an indigent recipient of public assistance within a certain relationship, the property of that person may be made liable for the assistance given. Essentially it is a proceeding in rem, as distinguished from the purely in personam action under section 3. When the duty of support is established, and this is an issue, the language of the amendment of 1951 imposes on the property of the one who owes that duty, an absolute liability. If the legislature had intended otherwise, it would have inserted, as it did in section 3, the requirement that liability was to be predicated on the financial ability of the property

owner. This is evident in a review of the section as originally enacted in 1937, wherein no question of financial ability arises because the property owner was, or had been at the time of receiving assistance, an "indigent person".

The purpose of this section, as originally enacted, was to require, in cases when an indigent recipient of public funds was a property owner, reimbursement from that property for the assistance given. In effect, the property is security for the grant of assistance just as it is in the case of a voluntary reimbursement agreement. Obviously, since he was an indigent and thus unable to provide for himself, the proceeding under the usual circumstances would have the effect of imposing a lien on his property, thus preserving against that property a right of reimbursement either of the whole, or in part, of the assistance granted. In the usual case there was no likelihood of the Commonwealth being reimbursed until such time as the recipient died, or his status as an indigent changed. The salutary feature of this section was that it did permit the Commonwealth to secure a lien against the assets of an indigent, regardless of their value, with some prospect of recouping all, or part, of the assistance given that person in his time of need. It seems only just and reasonable that the real and personal assets of one who has been supported by public funds should be subject to that debt, rather than these assets pass free and clear of the debt to the heirs of the indigent.

The amendment of 1951 broadened the scope of the proceeding to permit judgment against a property owner for assistance granted his or her spouse, or minor children. There is no change in the purpose. Thus a determination of the financial ability of the property owner to support his dependent, or dependents, is no more in issue under the amendment than

it was under the section as originally enacted. It now permits, by way of a lien, preservation for the Commonwealth of the right of reimbursement from the property of one whose obligation of support the Commonwealth has undertaken. It matters not that the property owner is, or is not indigent. The only requirements are (1) that he be liable for the support of the recipient, and (2) that he own property at the time assistance is given.

To argue that the Commonwealth must first prove the property owner is of sufficient financial ability to discharge his duty of support at the time assistance is rendered his dependent is specious. If financial ability can be shown, action should be instituted by petition in the quarter sessions court under section 3, or, in such cases where assistance was given and it was determined the one liable for support of the recipient was financially able at the time to support them, restitution could be enforced by an action in assumpsit. To impose upon the Commonwealth the burden of proving financial ability as a condition precedent to judgment under section 4, would render nugatory the amendment of 1951 since the same result would be achieved more effectively by either of the other two actions.

The evil inherent in the position of defendant is obvious. By refusing to sign a voluntary reimbursement agreement, if he were financially unable to support his wife, the Commonwealth would have no recourse against his property. In the usual case, proceedings under section 4 are not used unless, after investigation, it is determined an action for restitution, or an order under section 3, would be fruitless because of the financial inability of the property owner to support his dependent. Thus, even in cases of families not estranged, as in this case, a property owner could, by refusing to sign a reimbursement agreement, defeat

the right of the Commonwealth to ever recoup all or part of the funds expended in assistance, while a different standard would exist for indigent property owners who received assistance and signed a reimbursement agreement voluntarily. Needless to say, it would become increasingly difficult to secure the execution of voluntary reimbursement agreements.

It is argued that a property owner may be able to support himself but not his dependents and therefore, to secure a judgment against his only assets may very well pauperize him. This possibility did not arise under the section as originally enacted because. the property owner was therein described as an "indigent person". However, the legislature has wisely provided that the "home and furnishings" of the property owner shall not be subject to execution during the lifetime of that person, the surviving spouse, or dependent children. Thus, one earning a modest living sufficient only to support himself should not, because of the lien, become an indigent person.

We are of the opinion it is not necessary in proceeding under section 4 to first secure from the court of quarter sessions an order of support under section 3. Nor is it required, before a valid and binding judgment may be obtained by the Commonwealth, to prove the property owner is of sufficient financial ability to care for the recipient of assistance to whom he owes a duty of support. Opposite conclusions would render the amendment of 1951 purposeless.

Defendant also contends that section 4 is unconstitutional. He has not specified in what respect the section violates the Constitution. We presume his complaint is directed to that article and section which provides that one may not be deprived of his property without due process of law: Article I, section 9.

We are satisfied the common pleas court had jurisdiction of this cause. The proceedings have been in

accordance with the established rules of procedure in cases of assumpsit. Defendant, Harvey R. Allison, was represented by able counsel and offered a defense. The issues raised by the pleadings were tried before a jury and a verdict, which we consider just and proper and fully supported by the evidence, was rendered. In our opinion the judgment is valid and binding. Section 4 of the Support Law under which the action was instituted does not violate article I, section 9, or any other section of the Constitution of Pennsylvania.

We, therefore, make the following

*Order*

Now, March 11, 1957, at 9:30 a.m., defendant's motions for new trial and judgment n. o. v. are hereby dismissed.